# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 9

### OCTOBER TERM, A.D. 2012

### *January 25, 2013*

IN THE MATTER OF THE
ATTORNEY'S FEES AND COSTS IN
THE TERMINATION OF PARENTAL
RIGHTS TO: NRF and JWF, Minor
Children,

DONALD LEE TOLIN, Attorney for
LMB, Natural Mother,

Appellant
(Respondent),

v.                                                      S-12-0067

STATE OF WYOMING,
DEPARTMENT OF FAMILY
SERVICES,

Appellee
(Petitioner).

*Appeal from the District Court of Natrona County*
*The Honorable Catherine E. Wilking, Judge*

*Representing Appellant:*
    Donald Lee Tolin, Law Offices of Donald Tolin, Casper, Wyoming

*Representing Appellee:*
    Gregory A. Phillips, Wyoming Attorney General; Robin Sessions Cooley, Deputy
    Attorney General; Jill E. Kucera, Senior Assistant Attorney General; Susan K.
    Stipe, Senior Assistant Attorney General

*Before KITE, C.J., and GOLDEN,\* HILL, VOIGT, and BURKE, JJ.*

*\* Justice Golden retired effective September 30, 2012*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**GOLDEN**, Justice.

[¶1]    Attorney Donald L. Tolin, who was court appointed to represent an indigent parent in a parental rights termination action filed by the State of Wyoming, Department of Family Services (DFS), which is a state agency legislatively obligated to pay for the costs of the action including the indigent parent's attorney fee, Wyo. Stat. Ann. § 14-2-318(d)(ii) (LexisNexis 2011), appeals the district court's fifty percent reduction of his requested amount of attorney fees for his representation in this action.  As more fully explained below, we hold that the district court did not abuse its discretion by reducing Mr. Tolin's fee application and, therefore, we affirm that fee reduction.

## ISSUE

[¶2]    Mr. Tolin states the issue as:

> Whether or not the [district court] abused its discretion in cutting attorney's fee by 50%, and whether or not its decision was unsupported by the evidence, arbitrary, and capricious.

## STANDARD OF REVIEW

[¶3]    In the usual case where the trial court observed the attorney's work first hand from the start of the litigation through its conclusion, an appellate court plays a limited role in reviewing a trial court's award of an attorney's fee.  In the usual case, the appellate court customarily defers to the trial court's judgment and reviews the trial court's attorney fee award for abuse of discretion.  *Joe's Concrete & Lumber, Inc., v. Concrete Works of Colorado, Inc.*, 2011 WY 74, ¶ 12, 252 P.3d 445, 448 (Wyo. 2011); *Ultra Resources, Inc. v. Hartman*, 2010 WY 36, ¶ 149, 226 P.3d 889, 935 (Wyo. 2010).  "We can hardly think of a sphere of judicial decisionmaking in which appellate micromanagement has less to recommend it." *Fox v. Vice*, ---U.S.---, 131 S.Ct. 2205, 2216, 180 L.Ed.2d 45 (2011).  The instant case is not, however, the usual case because District Court Judge Scott Skavdahl, who observed Mr. Tolin's work from the start of the litigation through the end of the trial, resigned from his state judicial office and entered his federal judicial office long before Mr. Tolin filed his application for an award of his attorney's fee.  By the time Mr. Tolin filed his fee application, District Court Judge Catherine Wilking, appointed to fill Judge Skavdahl's vacated state judicial office, had been in that office nine months. It was Judge Wilking, not Judge Skavdahl, who reviewed and acted upon Mr. Tolin's fee application.  In Mr. Tolin's appellate brief, he does not assert that our standard of review of his fee award is other than an abuse of discretion.  We are confident that given Judge Wilking's experience and knowledge, both as a lawyer before her appointment to the trial bench and as a trial judge after that appointment, she was well-qualified to consider judiciously Mr. Tolin's fee application.  We also would note here that we agree with many federal appellate courts that appellate judges, such as those on this Court, "are

1

themselves experts in assessing the reasonableness of an attorney's fee award, and . . . the appellate court may independently review the record, or itself set the fee." *New Jersey v. EPA*, 687 F.3d 386, 390 (D.C. Cir. 2012) (per curiam) (quoting *Envtl. Def. Fund, Inc. v. EPA*, 672 F.2d 42, 54 (D.C. Cir. 1982)); *see also ACLU of Georgia v. Barnes*, 168 F.3d 423, 432 (11th Cir. 1999); *Halderman v. Pennhurst State Sch. & Hosp.*, 49 F.3d 939, 942-45 (3rd Cir. 1995); *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 181 (4th Cir. 1994); and *Sidag Aktiengesellschaft v. Smoked Foods Prods. Co., Inc.,* 960 F.2d 564, 566-67 (5th Cir. 1992).

## BACKGROUND

[¶4]   On March 16, 2009, District Court Judge Scott Skavdahl appointed Mr. Tolin to represent indigent LMB in a termination of parental rights action filed by the Wyoming Department of Family Services (DFS).  State law requires DFS to pay for the costs of the action, including the attorney's fee for the indigent parent.  Wyo. Stat. Ann. § 14-2-318(d)(ii) (LexisNexis 2011).  The action was tried before Judge Skavdahl and a six-person jury over seven trial days beginning September 27, 2010, and, with an intervening weekend break, ending October 5, 2010, with the jury's verdict terminating LMB's parental rights.  Mr. Tolin timely filed LMB's notice of appeal on October 21, 2010, but on November 30, 2010, pursuant to LMB's decision, he filed a notice withdrawing that appeal.

[¶5]   On February 1, 2011, Judge Skavdahl, having on January 31, 2011, resigned from his state judicial office, was installed as Federal Magistrate Judge for the District of Wyoming; on that same date, Judge Catherine Wilking was installed in the state judicial office vacated by Judge Skavdahl.[1]  On October 26, 2011, some eleven months after Mr. Tolin had filed LMB's notice withdrawing her appeal of the district court's order terminating her parental rights, and nearly nine months after Judge Skavdahl had left his state judicial office, Mr. Tolin filed in state district court his motion for an order approving payment of his attorney's fees in his representation of LMB.  His motion included his twenty-six page detailed itemized billing showing that for the period of February 27, 2009, through February 24, 2011, he claimed 487.17 hours at the hourly rate of $100, for a total of $48,717.00.  He also claimed expenses of $334.30.  Between early November 2011 and December 14, 2011, DFS filed its response to Mr. Tolin's fee motion, and Mr. Tolin filed his redacted motion as well as a seventy-eight page affidavit and a four-page affidavit, all in support of his fee motion.

[¶6]   On December 15, 2011, Judge Wilking held a thirty minute hearing on Mr. Tolin's fee motion. On January 9, 2012, Judge Wilking issued her decision letter, which was followed on January 10, 2012, by her order awarding Mr. Tolin $24,358.50 in fees, a fifty

---

[1] This Court has personal knowledge of these facts and takes judicial notice of them.

percent reduction from the fees sought in his motion, and $334.30 in expenses. Mr. Tolin timely appealed that order.

## DISCUSSION

[¶7] In the district court's decision letter, the court correctly observed the following principles:

> Wyoming has adopted the federal "lodestar" test for the determination of the reasonableness of attorney fees. *UNC Teton Exploration Drilling, Inc. v. Peyton*, 774 P.2d 584 (Wyo. 1989). *See Stanbury v. Larsen*, 803 P.2d 349 (Wyo. 1990). The lodestar test requires that two factors be considered: (1) whether the fee charged represents the product of reasonable hours times a reasonable rate; and (2) whether other factors of discretionary application should be considered to adjust the fee either upward or downward. *UNC Teton*, 774 P.2d at 595. The party who is seeking an award of fees has the burden of providing proof of the reasonableness of his fee. *See Miles v. CEC Homes, Inc.*, 753 P.2d 1021 (Wyo. 1988); *Jones Land & Livestock v. Federal Land Bank*, 733 P.2d 258 (Wyo. 1987). In order to meet that burden of proof, the claimant must present not only an itemized billing reflecting the time and the rate, but there must be evidence demonstrating that the fee was reasonable. *UNC Teton*.

*Hinckley v. Hinckley*, 812 P.2d 907, 915 (Wyo. 1991). *See also Ultra Resources, Inc.,* ¶ 162, 226 P.3d at 938. The district court determined that an hourly rate of $100 was a reasonable rate for Mr. Tolin's fee claim in the parental rights termination action and that rate is not an issue in this appeal. Similarly, the district court's award of $334.30 in expenses is not an issue here. The only issue before us is Mr. Tolin's claim that 487.17 hours is reasonable and the district court abused its discretion by reducing the hours claimed by fifty percent. The district court explained that reduction in its decision letter (emphasis added):

> Considering the "reasonable hours" factor, the Court thoroughly reviewed the itemized fees requested by Mr. Tolin and was concerned by several entries and concerned with the "reasonableness" of the hours spent by Mr. Tolin overall. The Court will detail many of those concerns herein, but will also note that **the concerns listed are merely illustrative and by no means exhaustive**:

1.	Mr. Tolin's invoice reflects over four (4) hours of legal research regarding the pretrial memorandum. Yet a review of the pretrial memorandum submitted by Mr. Tolin fails to reveal why that research was undertaken, as no case law is cited by Mr. Tolin in that memorandum and the memorandum does not mention any unique or novel legal issues involved in the termination action;

2.	Mr. Tolin's invoice contains many entries for time billed for clerical work, such as walking to and from the courthouse to file documents or to retrieve documents;

3.	Much of the time billed by Mr. Tolin is clearly excessive for the actual work done. For example, Mr. Tolin billed thirty (30) minutes to read a Notice of Setting for a Pretrial Conference, a document that would take only a few minutes to read;

4.	Mr. Tolin's invoice contains entries for over forty (40) hours of time spent reviewing eight-hundred and nine (809) pages of discovery, which the court finds excessive;

5.	The invoice indicates that it took Mr. Tolin approximately twelve (12) hours to review the Department of Family Service's exhibits, which the court finds excessive;

6.	Mr. Tolin's billing for actual trial time is also excessive. For example, the invoice contains entries for 17.83 hours billed on September 25, 2010; 17.72 hours billed on September 27, 2010; and 21.49 hours on September 28, 2010.

[¶8]	Mr. Tolin voices an initial criticism of the district court's decision, stating "unfortunately, Judge Wilking has made judicial determinations on matters in which she was not directly involved. At the time of trial, Judge Wilking was a private attorney and a contracted Guardian Ad Litem for the State of Wyoming. Prior to that she was a prosecutor for the State of Wyoming in [sic] as an Assistant District Attorney in the Seventh Judicial District." Unfortunately, Mr. Tolin has no one but himself to blame that Judge Skavdahl, who presided over the litigation, did not make the judicial determinations on Mr. Tolin's fee application. Recall that the trial in this case concluded on October 5, 2010; Mr. Tolin withdrew LMB's appeal on November 30, 2010; Judge Skavdahl did not join the federal judiciary until February 1, 2011; and Mr. Tolin did not

file his fee application until October 26, 2011. As we said earlier in this opinion, given Judge Wilking's experience and knowledge, both as a lawyer before her appointment to the state trial bench and as a trial judge after that appointment, she was well-qualified to consider judiciously and make judicial determinations about Mr. Tolin's fee application. *Combs v. Walters*, 518 P.2d 1254 (Wyo. 1974) (per curiam).

[¶9]    The overall tenor of Mr. Tolin's argument seems to be that the district court should have accepted his evidentiary submissions (including his bill records) at face value and awarded his fee application in the full amount. To the contrary, the court's discretion in fashioning a fee award "is by no means shackled by" the attorney's billing records; "it is the court's prerogative (indeed, its duty) to winnow out excessive hours." *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 296 (1ˢᵗ Cir. 2001). The district court has the obligation to peruse the fee application with an experienced eye. *Foley v. City of Lowell, Mass.*, 948 F.2d 10, 19 (1ˢᵗ Cir. 1991). We agree with the federal courts from which we adopted the lodestar test, *UNC Teton Exploration Drilling Inc. v. Peyton*, 774 P.2d 584, 594-95 (Wyo. 1989), that "[b]illing for legal services . . . should not be a merely mechanical exercise. . . . [T]he Court must scrutinize the claim with particular care. . . . A reasonable fee can only be fixed by the exercise of judgment." *Copeland v. Marshall*, 641 F.2d 880, 888 (D.C. Cir. 1980). This is particularly true where the fee is sought from a public agency like DFS that has the ability to pay with legislatively authorized funds. *Id.* We agree with the many federal courts that emphasize the importance of "billing judgment." Because the attorney who is seeking an award of fees has the burden of providing proof of the reasonableness of his fee, that attorney must prove he or she has exercised "billing judgment." *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 1939-40, 76 L.Ed.2d 40 (1983); *UNC Teton*, 774 P.2d at 594-95; *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 662 (5ᵗʰ Cir. 2002). "Billing judgment is usually shown by the attorney writing off unproductive, excessive, or redundant hours." *Green*, 284 F.3d at 662; *see also Barnes*, 168 F.3d at 428 (fee applicant must exclude from fee application excessive, redundant, or otherwise unnecessary hours that would be unreasonable to bill a client irrespective of the skill, reputation or experience of counsel); *National Ass'n of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1327-28 (D.C. Cir. 1982) (fees are not recoverable for nonproductive time; therefore, the fee application should indicate whether nonproductive time or time expended on unsuccessful claims was excluded and, if time was excluded, the nature of the work and the number of hours involved should be stated); *Ramos v. Lamm*, 713 F.2d 546, 553 (10ᵗʰ Cir. 1983).

[¶10] Against this backdrop of the fee applicant's burden of proof and the district court's duty to winnow out unproductive, excessive, and redundant hours, we now turn to Mr. Tolin's criticisms of the district court's six enumerated "merely illustrative and by no means exhaustive" concerns about several entries of Mr. Tolin's billing records and the reasonableness of the overall hours claimed by Mr. Tolin. The district court's selection of this short representative list of concerns is understandable, as there is no requirement

for a line-by-line or blow-by-blow examination of the fee applicant's entire billing record. *Case v. Unified Sch. Dist. No. 23, Johnson Cnty., Kan.*, 157 F.3d 1243, 1254 (10th Cir. 1998); *Foley*, 948 F.2d at 20. As Justice Elena Kagan has colorfully stated, the "trial courts need not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice*, ---U.S. at ---, 131 S. Ct. at 2216.

[¶11] The district court's first enumerated concern was Mr. Tolin's billing entry of over four hours of legal research regarding his pretrial memorandum. Our review of that entry identifies that he claimed 2.03 hours on July 27, 2009, (6 a.m. to 8:02 a.m.) ("Research case law for pretrial memorandum and pretrial conference") and 2.15 hours on July 28, 2009 (10:45 a.m. to 12:54 p.m.) ("Additional Research on case law for Pretrial Memorandum") for a total of $418.00; and the billing entry for August 4, 2009, shows he attended a one hour pretrial conference on that date. Mr. Tolin's pretrial memorandum, as the district court correctly observed, contains no case law citations and does not mention any unique or novel legal issues involved in the parental rights termination action. Indeed, the memorandum states that there are no known issues with respect to service of process, parties, jurisdiction or venue, and amendments to pleadings; and no known contested issues of law. Mr. Tolin's appellate argument asserts that he researched legal issues regarding parental rights terminations, pretrial memorandum requirements, and the question of a jury trial without an indigent parent's payment of jury fees. He does not identify any other specific legal issue. In his affidavit in support of his fee application, he states that he is a very knowledgeable and experienced trial attorney representing children and parents in civil and criminal bench and jury trials over a thirty-three year period; and has taken a significant number of continuing legal education hours related to representation of children and parents and trial advocacy. Given Mr. Tolin's professed experience, knowledge, and familiarity of the applicable law, and his failure to identify any specific issues that he researched, we agree with the district court's exercise of discretion in eliminating these hours. *Ursic v. Bethlehem Mines*, 719 F.2d 670, 676-77 (3rd Cir. 1983). Mr. Tolin's inclusion of billing entries like these reveals that he has failed to exercise billing judgment.

[¶12] The district court's second enumerated concern was Mr. Tolin's many billing entries for clerical work, such as walking to and from the courthouse to file or retrieve documents. Mr. Tolin's appellate criticism is that the district court did not cite specific instances and his argument is "no time was billed for strictly clerical work." Our own review of his billing entries found at least fourteen such entries:

- 3/12/2009 Take paperwork to Angie/District Court: Affidavit of Indigency (client) (0.25 hours/$25.00);

- 3/16/2009 Pickup from Clerk of Court's office and review certified copy of court order appointing counsel for mother (0.25 hours/$25.00);

6

- 4/02/2009 Pickup from Clerk of Court's office and review Notice of Setting for default hearing on father (0.17 hours/$17.00);

- 6/09/2009 Pickup and review correspondence: Notice of Setting of Pretrial Conference signed by Judge Skavdahl (0.50 hours/$50.00);

- 8/03/2009 Pickup from Clerk of Court's office and review copy of proposed court order (0.20 hours/$20.00);

- 8/03/2009 Pickup from Clerk of Court's office and review pleading (0.32 hours/$32.00);

- 7/14/2010 File and mail pleadings and certificate of service (1.05 hours/$105.00);

- 7/26/2010 File pleadings with Clerk of Court (0.25 hours/$25.00);

- 7/26/2010 Pickup from Clerk's office and review certified copy of court order granting modification of scheduling order (0.20 hours/$20.00);

- 8/10/2010 Pickup from courthouse and review certified copy of Order Granting Modification of Scheduling Order (0.28 hours/$28.00);

- 9/22/2010 Pickup juror list from Sam/District Court Clerk's Office (0.25 hours/$25.00);

- 9/29/2010 File pleadings with Clerk of Court: Stipulation of Respondent's Exhibits (0.17 hours/$17.00);

- 10/22/2010 Pickup paperwork at courthouse (0.25 hours/$25.00);

- 11/09/2010 Pickup from Clerk of Court's office and review proposed court order appointing counsel returned unsigned and noted by judge to hold for hearing (0.10 hours/$10.00).

[¶13] The case law is clear that "purely clerical or secretarial tasks should not be billed at a paralegal rate regardless of who performs them." *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10, 109 S.Ct. 2463, 2472 n.10, 105 L.Ed.2d 229 (1989). "Clerical work, however, should be compensated at a different rate from legal work." *Walker v. United States Dep't. of HUD*, 99 F.3d 761, 770-71 (5th Cir. 1996). "[C]lerical or secretarial tasks ought not to be billed at lawyers' rates, even if a lawyer performs them." *Lipsett v. Blanco*, 975 F.2d 934, 940 (1st Cir. 1992). Mr. Tolin's inclusion of billing entries like these also reveals that he has failed to exercise billing judgment.

[¶14]  The district court's third, fourth, and fifth enumerated concerns give examples of clearly excessive billing hours, including reading a notice of setting for a pretrial conference, spending over forty hours reviewing 809 pages of discovery, and spending twelve hours to review DFS exhibits.  Mr. Tolin's appellate responses range from the district court has no basis to know how much time was taken to do a specific task and should take his word for it, to "counsel's reading speed is counsel's reading speed," and to reviewing exhibits for a seven-day trial cannot be just a quick skim through.  We reject these responses and find the following passage a suitable explanation for that rejection:

> There is no requirement, either in this court or elsewhere, that district courts identify and justify each disallowed hour. *See New York State Association for Retarded Children v. Carey,* 711 F.2d 1136, 1146 (2d Cir. 1983); *Copeland v. Marshall,* 641 F.2d at 903.  Nor is there any requirement that district courts announce what hours are permitted for each legal task.  Such a rule would lead to disagreement of the most odious sort between court and counsel.
>
> No objective standard exists to resolve a dispute, for example, over ten hours logged for drafting interrogatories. A lawyer may insist the time was necessary, while a court, based upon experience and judgment, including knowledge of the case itself, may declare half the time to have been unnecessary. Under the theory proposed by plaintiffs' counsel, dozens of subsidiary questions then arise. Was the lawyer interrupted while drafting? Was the draft in longhand or dictated? Did the lawyer use previous forms on a word processor? Was research necessary? Were, for example, fourteen of thirty interrogatories really necessary? Is the lawyer a slow thinker, a poor writer (occasioning many drafts), or harassing the opposition for tactical purposes?
>
> As we stated, such inquiries would quickly become odious. The process would descend to a contest between court and counsel, with counsel insisting that his or her integrity is being impugned every time the court questions the number of hours logged for a given day or a particular task. And, such a process would still not result in a product free of dispute. To the contrary, disputes would be multiplied, violating the Supreme Court's caution that a "request for attorney's fees should not result in a second major litigation." *Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941.

A general reduction of hours claimed in order to achieve what the court determines to be a reasonable number is not an erroneous method, so long as there is sufficient reason for its use. *Hensley,* 461 U.S. at 424, 103 S.Ct. 1933; *Love v. Mayor of Cheyenne,* 620 F.2d 235, 237 (10th Cir. 1980); *Northcross v. Board of Education,* 611 F.2d 624 (6th Cir. 1979), *cert. denied,* 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980); *Davis v. Fletcher,* 598 F.2d 469 (5th Cir. 1979). For example, in *Hensley* the Supreme Court expressly found to be proper a one-third reduction of one attorney's hours, "to account for his inexperience and failure to keep contemporaneous time records." 461 U.S. at 438 n.13, 103 S.Ct. at 1942 n.13. In [*Pennsylvania v.*] *Delaware Valley* [*Citizens' Council for Clean Air*, 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986)]*,* the Supreme Court expressed no disagreement with general reductions by the district court of 48% and 33 1/3% in time claimed by various counsel. Reasons given for those reductions included findings of "unnecessary, unreasonable or unproductive" time, 106 S.Ct. at 3099, and that "the time spent on the particular activity was 'excessive,' or that a less amount of time was 'reasonable,' " *id.* at 3092 n. 2.

*Mares v. Credit Bureau of Raton,* 801 F.2d 1197, 1202-03 (10th Cir. 1986).

[¶15]  The district court's sixth enumerated concern was Mr. Tolin's excessive billing for "actual trial time," as exemplified by entries for 17.83 hours on Saturday, September 25, 2010; 17.72 hours on Monday, September 27, 2010; and 21.49 hours on Tuesday, September 28, 2010.  In Mr. Tolin's appellate response, he correctly observes that the first trial day was Monday, September 27, 2010, and his actual "in trial" hours were 6.95 hours (3.23 hours in the morning and 3.72 hours in the afternoon).  He also correctly observes that on the second trial day, Tuesday, September 28, 2010, his actual "in trial" hours were 6.02 hours (2.52 hours in the morning and 3.50 hours in the afternoon).  Obviously, the district court misspoke about those hours being "actual trial time."  But those corrections about "actual trial time" do not cast doubt on the excessiveness of Mr. Tolin's billing for the period from Friday, September 24, 2010, through Tuesday, October 5, 2010.  In the entries that follow, as highlighted, we have paid particular attention to the last entries of one day and the first entries of the next day; one must ask: when did the attorney sleep, eat, and take care of other personal matters.  His billing entries for that period are:

- Friday, September 24, 2010

His first entry is at 5:00 a.m. and his last entry is 11:50 p.m., and he claimed 13.04 hours.

- Saturday, September 25, 2010

  His first entry is 6:00 a.m. and his last entry is 11:50 p.m., and he claimed 17.83 hours.

- Sunday, September 26, 2010

  His first entry is 4:30 a.m. and his last entry is 11:57 p.m., and he claimed 19.33 hours.

- Monday, September 27, 2010 (first trial day)

  His first entry is 5:30 a.m. and his **last entry is 11:55 p.m**., and he claimed 17.72 hours.

- Tuesday, September 28, 2010 (second trial day)

  His **first entry is 1:00 a.m.** and his **last entry is 11:55 p.m.,** and he claimed 21.49 hours.

- Wednesday, September 29, 2010 (third trial day)

  His **first entry is 1:30 a.m.** and his **last entry is 11:55 p.m.,** and he claimed 21.37 hours.

- Thursday, September 30, 2010 (fourth trial day)

  His **first entry is 2:00 a.m.** and his **last entry is 11:55 p.m.,** and he claimed 19.39 hours.

- Friday, October 1, 2010 (fifth trial day)

  His **first entry is 1:00 a.m.** and his **last entry is 11:58 p.m.,** and he claimed 20.58 hours.

- Saturday, October 2, 2010 (weekend break)

10

His first entry is 6:05 a.m. and his last entry is 11:30 p.m., and he claimed 15 hours.

- Sunday, October 3, 2010 (weekend break)

  His first entry is 6:00 a.m. and his last entry is 4:06 p.m., and he claimed 10.10 hours.

- Monday, October 4, 2010 (sixth trial day)
  His **first entry is 2:00 a.m.** and his **last entry is 11:59 p.m.,** and he claimed 21.23 hours.

- Tuesday, October 5, 2010 (seventh day of trial)

  His **first entry is 1:00 a.m.** and his last entry is 7:54 p.m., and he claimed 16.47 hours.

[¶16]  The total hours billed for the period Friday, September 24, 2010, through Tuesday, October 5, 2010, are 213.55 hours.  For that twelve day period, there are 288 hours (12 x 24 hours).  Of that 288 hour period, Mr. Tolin billed 213.55 hours.  We find this billing clearly excessive.

[¶17]  Another time period is equally excessive, from Friday, August 27, 2010, through Sunday, August 29, 2010, and again we highlight the last entry on one day and the first entry on the next day:

- Friday, August 27, 2010
  His entries began at 5:51 p.m. and **ended at 11:45 p.m.,** and he claimed 5.90 hours.

- Saturday, August 28, 2010

  His **first entry is 12:00 a.m.** through 8:00 a.m. (8 hours); his next entry is 9:00 a.m. through 2:00 p.m. (5 hours); his next entry is 2:30 p.m. through 6:00 p.m. (3.5 hours); his next entry is 7:00 p.m. through 9:45 p.m. (2.75 hours); and his **final entry is 10:00 p.m. through 11:45 p.m.** (1.75 hours). Total hours billed for reviewing discovery from DFS files is 21 hours.

- Sunday, August 29, 2010

  His **first entry is 1:00 a.m.** through 9:15 a.m. (8.25 hours); his next entry is 10:00 a.m. through 4:00 p.m. (6 hours); his next entry is 5:30 p.m. through

7:15 p.m. (1.75 hours); and his last entry is 7:15 p.m. through 11:30 p.m. (4.67 hours). Total hours reviewing discovery from DFS files and researching DFS policies is 20.67 hours.

Thus, for the period Friday, August 27, 2010, through Sunday, August 29, 2010, he claims 47.57 hours.

[¶18] The above and foregoing billing entries for August 27 through August 29, 2010, and September 24 through October 5, 2010, are patently excessive. *Metro Data Systems, Inc. v. Durango Systems, Inc.*, 597 F.Supp. 244, 246 (D. Ariz. 1984) (accuracy of time records called into question by lawyer's claim to have logged 18.9 hours in one day; to have accomplished this, he would have had to have been in his office from 5:06 in the morning until midnight, without taking any time for meals, to relieve himself or to do anything else); *Chrapliwy v. Uniroyal, Inc.*, 583 F.Supp. 40, 49 (N.D. Ind. 1983) (court is deeply concerned about lead counsel's excessive hours; on thirty-four occasions he billed for ten hours or more; on seventeen occasions he billed for twelve hours or more; he billed for one twenty hour day as well as eight days where his hours billed equaled or exceeded fifteen hours). In *Ramos v. Lamm*, the appeals court observed:

> [L]awyers who remember spending the entire day working on a case are likely to overstate the hours worked by forgetting interruptions and intrusions unrelated to the case. In the instant case, for example, Ms. Wiesenberg's reconstructed time records for May 3, 1980 to May 23, 1980 show the following hours of her time expended on the appeal: 10, 12.25, 14.05, 12.85, 13, 15, 5.5, 6.75, 20.75, 13.5, 9.65, 11.8, 13.05, 8.85, 14, 18, 0, 15.5, 11.85, 15.9, and 15.4. . . . We consider it doubtful that one lawyer, briefing an appeal, would work 20 days of a consecutive 21-day period, never spending less than 5.5 hours on the case and spending between 11.80 hours and 20.75 hours on 15 of those days. The district court should give special scrutiny to any reconstructions or estimates of time expended and make reductions when appropriate.

713 F.2d at 553 n.2. On this record, we cannot escape the judgment that Mr. Tolin's litigation efforts became overkill. *Oklahoma Aerotronics, Inc. v. United States*, 943 F.2d 1344, 1347 (D.C. Cir. 1991).

[¶19] In dealing with excessive hours resulting from the fee applicant's failure to exercise billing judgment, the district court has the discretion to reduce by a reasonable percentage the number of hours claimed "as a practical means of trimming fat from a fee application," as the district court did in the instant case. *Kirsch v. Fleet Street, Ltd.*, 148

F.3d 149, 173 (2nd Cir. 1998) (quoting *New York Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1146 (2nd Cir. 1983); *see also Saizan v. Delta Concrete Prod. Co.,* 448 F.3d 795, 799-800 (5th Cir. 2006) (same); *Role Models America, Inc. v. Brownlee*, 353 F.3d 962, 973 (D.C. Cir. 2004) (same); *Walker v. City of Mesquite, Tex.,* 313 F.3d 246, 251 (5th Cir. 2002) (same); *Green*, 284 F.3d at 662 (same); *Gay Officers Action League*, 247 F.3d at 299 (same); *Walker*, 99 F.3d at 769 (same); *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995) (same); *United States E.E.O.C. v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1288 (7th Cir. 1995) (same); *Foley*, 948 F.2d at 18-20 (same); *Oklahoma Aerotronics,* 943 F.2d at 1347 (same); *Leroy v. City of Houston*, 831 F.2d 576, 586 (5th Cir. 1987) (same); and *Mares*, 801 F.2d at 1204 (same).

[¶20]  Having laboriously reviewed the record in light of the district court's decision letter, Mr. Tolin's contentions, and the considerations set forth in this opinion, we hold that the district court did not abuse its discretion when it reduced Mr. Tolin's fee application by fifty percent.  Affirmed.