BURKE, Justice,
concurring in part and dissenting in part, with whom KITE, Chief Justice, joins.
[141] I am in general accord with the result reached in the majority opinion. How *781 ever, I disagree with the majority's treatment of the attorney fee issue and dissent from that portion of the opinion.
[142] Before addressing that issue, further comment regarding the district court's decision to modify visitation is warranted. The majority focuses upon the move to Wellington as the primary factor supporting modification, and I take no issue with that aspect of the opinion. It should be made clear, however, that the move was not the sole basis for the district court's decision. Father's conduct also played a significant role.
[148] In its decision letter, the district court explained:
As first alleged, the motion to modify seemed to rely on a continual exacerbation of long-standing issues concerning the defendant's ability to communicate with the plaintiff as well as the plaintiffs behavior towards her and in the presence of her child. With a subsequent move of the plaintiff across state lines, approximately forty (40) miles away, the allegations were somewhat more substantial, While none of those claims or allegations standing alone might be considered a material change, in the context of the evidence presented in this case the Court finds that the defendant has [met] her burden on that issue. By way of example, the Court notes that the plaintiff, while asserting no change in cireumstances has occurred, presents evidence himself of frequent communication difficulties, sometimes resulting in heated exchanges, and even the involvement of law enforcement authorities. In fact, at one point in his testimony the plaintiff describes his disappointment that law enforcement would not, upon his request, intervene to assist him as to his visitation issues. The plaintiff gives no weight whatsoever to the involvement of the police and how that [alffects [the child], who has aged from 3 % to 6 during the pendency of this last round of litigation. It appears from the plaintiff's testimony that because the defendant, admittedly, also reacts inappropriately on some occasions when communication breaks down, that the Court should give little or no weight to his role in these exchanges. Other significant issues have developed since the entry of the last order including the plaintiff's refusal to communicate by email or text message with the mother. In addition, the plaintiff has on a number of occasions refused to allow the participation of [child's] step-father, defendant's new husband. This occurs in cireumstances such as not leaving the child at the mother's home merely because the mother doesn't happen to physically be there at the time. The plaintiff offers no explanation or justification as to how it is contrary to the safety or well-being of the child to drop her off at her own home.
The evidence was replete with comments by the plaintiff that clearly indicate he stands by his decision making in this regard without having given it the least bit of thought in terms of the impact on the best interests of his daughter. Instead, he evidences in all of his testimony and comments a strong desire to control everything about custody and visitation including his former wife's new family. That, combined with his unshakeable conclusion that he should have been the custodial parent in the first instance when this Court ruled against him, have [led] him to defend all of the defendant's allegations superficially and without any analysis of their impact on the parties and the child.
The record supports the district court's findings.
[144] In determining the best interests of a child, the legislature has identified several factors that the court must consider. Wyo. Stat. Ann. § 20-2-201. Although not specifically referenced, the district court's analysis dovetails with those factors identified in Wyo. Stat. Ann. § 20-2-201(a)(v)-(vii) (LexisNexis 2011):
(v) How the parents and each child can best maintain and strengthen a relationship with each other;
(vi) How the parents and each child interact and communicate with each other and how such interaction and communication may be improved;
(vii) The ability and willingness of each parent to allow the other to provide care without intrusion, respect the other par *782 ent's rights and responsibilities, including the right to privacy.
From my perspective, application of those factors to Father's conduct in this case would justify modification of visitation even if Father had not moved to Wellington.
[T145] I would also affirm the district court's decision to award attorney fees to Mother. Father does not challenge the hourly rate of Mother's attorney. The fees awarded were a fraction of the fees incurred by Mother in the post divorce proceedings. Again, from my perspective, the district court would have been justified in reimbursing Mother in full for all attorney fees incurred by Mother. The district court, however, in the exercise of its discretion opted to limit the attorney fee award to those associated with Father's unsuccessful motions to compel. In response to the district court's order, Mother's attorney submitted an itemization of those costs. Predictably, Father contested the costs. His arguments were twofold. First, he contended that Mother was bound by a trial exhibit that was never admitted into evidence. The majority correctly concludes that the exhibit could not have been considered by the trial court. Secondly, Father argued that the fees were "manufactured" or "all made up." The district court flatly rejected that allegation: "I reject that [trial counsel] has ... just dum-mied up those fees."
[146] We review an award of attorney fees for abuse of discretion and typically defer to the trial court's judgment. Tolin v. State, 2013 WY 9, ¶ 3, 294 P.3d 879, 881 (Wyo.2013). As we recently commented, "We can hardly think of a sphere of judicial decision making in which appellate micromanagement has less to recommend it." Id., quoting Fox v. Vice, - U.S. --, 131 S.Ct. 2205, 2216, 180 L.Ed.2d 45 (2011). In this case, the district court was intimately familiar with the parties, the issues, and the overall litigation. It was in an excellent position to evaluate the claim for attorney fees and determine whether the time claimed was reasonable. According to the district court, "I compared it to the work done, the timing of the motions, the responses, it matches." The district court was in a far better position than this Court to determine the reasonableness of the fees, and I am unable to reach the conclusion that there was an abuse of discretion.
[§ 47] Finally, I would award Mother reasonable attorney fees incurred in this appeal. Such fees are statutorily authorized to enable a party "to carry on or defend the action." Wyo. Stat. Ann. § 20-2-111; Hendrickson v. Hendrickson, 583 P.2d 1265, 1268 (Wyo.1978). Father is an attorney representing himself in litigation at the trial level and in this appeal. Mother has incurred thousands of dollars in attorney fees in post divorce litigation prior to this appeal. The district court determined that Mother's monthly net income for child support purposes is $3,878.15. Mother deserves a level playing field and reimbursement of attorney fees as authorized by statute is justified in this case.