# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 22

OCTOBER TERM, A.D. 2013

February 19, 2014

BOARD OF PROFESSIONAL
RESPONSIBILITY, WYOMING
STATE BAR,

Petitioner,

v.

D-14-0003

STACY E. CASPER, WSB No. 6-3431,

Respondent.

## ORDER SUSPENDING ATTORNEY
## FROM PRACTICE OF LAW AND ASSESSING COSTS

[¶1]     This matter comes before the Court upon a Report and Recommendation for 30 Day Suspension stipulated to by Petitioner, the Board of Professional Responsibility of the Wyoming State Bar (the Board); and Respondent, Stacy E. Casper. Although Respondent has stipulated to the violation and discipline, and the Court accepts the stipulated recommendation, the Court writes this opinion rather than simply adopting the Board's recommendation because these are matters of considerable importance to members of the Wyoming State Bar.    Having considered the Report and Recommendation; having reviewed the Board's record, including the parties' stipulation and Respondent's Affidavit of Factual Basis; and being fully advised in the matter, the Court finds and concludes:

## FACTS

[¶2]     This is an attorney discipline case that arose out of Respondent's billing excessive legal fees and her subsequent improper attempts to collect those fees. Respondent entered into a Legal Services Agreement (LSA) with her client in December 2011, and thereafter entered her appearance on the client's behalf in a divorce and child custody proceeding. The LSA provided:

1

> MINIMUM BILLINGS: CLIENT understands that when ATTORNEY is in the office, ATTORNEY charges a minimum of one quarter hour (15 minutes) for CLIENT'S case, including telephone calls, except for reviewing and signing letters which will be billed for one-quarter hour.

[¶3]   The LSA also authorized Respondent to file a lien on all property of the client to secure fees and costs, and it permitted Respondent to "file and record this LIEN and/or file this Agreement."

[¶4]   The client paid Respondent a $5,000.00 retainer, and Respondent represented the client through the first day of trial, October 12, 2012.  The proceedings were adjourned and subsequently reset for a second day of trial, April 19, 2013.  In January 2013, Respondent filed a motion to withdraw because the client had not paid her fees.  That motion was granted by the district court, and the client completed the trial without assistance of counsel.  The Decree of Divorce, entered April 30, 2013, identified certain real property as marital property and ordered the parties to sell it.

[¶5]   On May 13, 2013, Respondent caused to be filed of record with the Natrona County Clerk a "Lien Statement" which indicated that her client owed her $18,717.05. The Lien Statement identified the real property as being subject to the lien and it indicated that it was being filed pursuant to Wyo. Stat. Ann. § 29-1-312 (LexisNexis 2013).  Attached to the Lien Statement were a copy of the LSA between Respondent and her client and a copy of the "Client Ledger," which sets forth, in some detail, the tasks completed by Respondent and her staff, the charges therefore, and the disbursements made on the client's behalf.

[¶6]   The client's ex-husband was the record owner of the property.  Respondent did not notify him or his agent of her intent to file the lien or of filing the lien.  The ex-husband's attorney contacted Respondent to question the propriety of the lien, but Respondent took no action to correct it.  The ex-husband then filed a Complaint with bar counsel, and this matter was initiated.  Respondent and the Board have stipulated that Respondent violated Rules 1.5 (Fees), 1.9(c) (using confidential information to the disadvantage of a former client), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation) of the Wyoming Rules of Professional Conduct for Attorneys at Law.

## ATTORNEY DISCIPLINARY PROCEDURE

[¶7]   The purpose of a state bar disciplinary procedure is to maintain "the integrity of the bar and to prevent the transgressions of an individual lawyer from bringing its image into disrepute," *In re Clark*, 613 P.2d 1218, 1221 (Wyo. 1980) (quoting *Attorney Grievance Comm'n of Maryland v. Walman*, 374 A.2d 354, 361 (Md. 1977)), and to "protect the public and the administration of justice."  *Bd. of Prof'l Responsibility v.*

*Davidson*, 2009 WY 48, ¶ 17, 205 P.3d 1008, 1015 (Wyo. 2009). The Wyoming Supreme Court is charged with adopting rules of court practice having the effect of law, Wyo. Stat. Ann. § 5-2-113 (LexisNexis 2013), and with adopting rules governing the professional conduct of attorneys, establishing the bar association, and establishing rules for attorney discipline. Wyo. Stat. Ann. § 5-2-118 (LexisNexis 2013).

[¶8]  Membership to the bar is by petition to the Wyoming Supreme Court, Wyo. Stat. Ann. § 33-5-104 (LexisNexis 2013), and attorneys are "subject to the exclusive disciplinary jurisdiction of this Court and the Board . . . ." Disciplinary Code for the Wyoming State Bar, § 1(a). As this Court held in 1938, disciplinary proceedings are "necessarily incident to the inherent power of courts to control properly their own affairs." *State Bd. of Law Examiners v. Brown*, 53 Wyo. 42, 49, 77 P.2d 626, 628 (Wyo. 1938).

> [T]he Board is an arm of this Court whose purpose is to investigate allegations of professional misconduct and to report its findings and recommendations to the Court, which is the ultimate decision-maker in attorney disciplinary matters. Sections 21(c)(iii) and (iv) of the current Disciplinary Code make it clear that the Court's determination of appropriate discipline is its own, but that the determination must be made upon the evidence that was presented to the Board at the hearing.

*Davidson*, 2009 WY 48, ¶ 8, 205 P.3d at 1012, citing *Mendicino v. Whitchurch*, 565 P.2d 460, 465-66, 475 (Wyo. 1977). As this Court explained in *Meyer v. Norman*, 780 P.2d 283, 288 (Wyo. 1989), the Board is "an ancillary body structured by the court and has no independent power, jurisdiction, or authority other than that specifically delegated to it in accordance with the Disciplinary Code."[1] The Court gives due consideration to the findings and recommendations of the Board, but the "ultimate judgment in these cases is vested in this Court." *Mendicino*, 565 P.2d at 466; *see also Davidson*, 2009 WY 48, ¶ 1, 205 P.3d at 1012; *In re Disciplinary Action Against Hellerud*, 714 N.W.2d 38, 41 (N.D. 2006).

## DISCUSSION

### *Excessive fees – Wyo. R. Prof. Conduct 1.5*

[¶9]  Respondent has stipulated to the following facts regarding her billing in this matter:

---

[1] The structure that existed in *Meyer* has since been modified, but the rationale remains the same.

19. . . . the fee agreement was signed by [her client], on December 8, 2011. Respondent's first billing entry, on December 12, 2011, describes .25 hours spent by Respondent in reviewing the fee agreement. There is an identical entry on December 14, 2011. Thus, Respondent incorrectly billed her client .5 hours (or $100) for reviewing the fee agreement prepared by Respondent's staff and signed by the client several days earlier. Respondent acknowledges that this time should not have been billed, and certainly not billed twice.

20. Respondent's billing practice for the case was to write down tasks as she completed them. These tasks were then billed pursuant to a fee schedule that billed Respondent's time spent on cases in minimum increments of .25 hours. Respondent did not keep track of the amount of time she actually spent on certain tasks performed under the minimum billing increment.

21. The billing record contains 106 different entries for Respondent's one-quarter hour minimum increment. Respondent acknowledges that few if any of those tasks would reasonably require a quarter hour of her time. For example, Respondent routinely billed .25 hours each to sign such documents as subpoenas, stipulated orders and pleadings.

22. Furthermore, of the 106 entries for Respondent's minimum, quarter-hour increment, 75 are for "review" of some document. Respondent routinely billed .25 hours each for review of such things as the fee agreement, one- or two-page pleadings, subpoenas, a one-page order for mediation, a one-page notice of setting, and numerous one-page letters. Respondent acknowledges that these billing practices constituted an abuse of the minimum time increment feature of the fee agreement.

23. There are instances in which Respondent billed twice for the same activity. In several instances, Respondent billed .25 hours to review a document and another .25 hours to sign the same document.

24. In one instance, Respondent billed her client for time spent on a motion to continue that was necessitated by

4

Respondent's scheduling conflict. In this instance, the proper exercise of billing judgment demanded that Respondent's client should not have been billed.

25. In numerous instances, the time recorded on Respondent's billing record came several days after the document to which it relates, which resulted in the appearance that Respondent was doing "after the fact" billing for tasks already completed. In fact, this appearance was caused by a problem with how time was entered by Respondent's support staff.

[¶10] Respondent acknowledges that this conduct violated Rule 1.5 of the Wyoming Rules of Professional Conduct.[2] The stipulated facts indicate that she billed for tasks she did not perform, billed twice for the same activity, and billed for tasks already completed

---

[2] Rule 1.5 reads as follows:

(a) A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

days before. Billing for work not done is a clear violation of Rule 1.5's prohibition of making an agreement for, charging, or collecting an unreasonable fee. "[A] lawyer who has undertaken to bill on an hourly basis is never justified in charging a client for hours not actually expended." ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 93-379, at 5 (1993). *In re O'Brien*, 29 P.3d 1044, 1048 (N.M. 2001) ("Any fee is excessive when absolutely no services are provided.").

[¶11] Use of billing with minimum time increments does not necessarily result in an unreasonable fee. The Court recognizes that use of minimum billing increments is a useful tool which is not, in and of itself, unethical. The Task Force on Lawyer Business Ethics has explained:

> For convenience, lawyers generally keep track of the time spent using standard increments of time, commonly six minutes (0.1 hour), ten minutes (1/6 hour) or fifteen minutes (1/4 hour). This approach is essential and should not be objectionable unless the increments are unreasonably large or are used in an abusive manner. It would not be practical to keep track of time in constantly varying measurements, and minimum increments serve the practical needs of both lawyers and clients. On the other hand, the practice should not be abused. Legitimate use of a minimum time increment may depend on how the lawyer records the balance of the increment. Two fifteen-minute charges for two five-minute calls within the same fifteen-minute period seem inappropriate; some balancing should be used.

Task Force on Lawyer Business Ethics, *Statement of Principles*, 51 Bus. Law. 745, 760 (1995-1996). A necessary companion to the requirement that a lawyer bill clients only for work done is the requirement that the lawyer's invoices accurately describe the legal services and amounts charged to the client. ABA Formal Op. 93-379, at p. 9.[3]

[¶12] In this case, Respondent had specifically contracted with her client to bill in minimum increments of fifteen minutes. This Court does not hold that such an agreement is unreasonable. Contractual clauses for payment of attorneys' fees are "generally a matter of agreement between the lawyer and client." *In re Hellerud*, 714 N.W.2d at 41. However, "[t]he reasonableness of a fee is not measured solely by examining its value at the outset of the representation; indeed an otherwise-reasonable fee

---

[3] Rule 1.4(b) of the Wyoming Rules of Professional Conduct requires a lawyer to "explain a matter to the extent reasonably necessary to permit the client to make informed decisions . . . ." This includes the requirement that bills sent to the client contain enough information for the client to understand what he or she is paying for. John M. Burman, *Professional Responsibility in Wyoming* 137 (2008).

can become unreasonable if the lawyer fails to earn it." *Attorney Grievance Comm'n of Maryland v. Garrett*, 46 A.3d 1169, 1178 (Md. 2012). Attorneys' duties to clients can exceed the duties of parties under contract law. This is because the attorney-client relationship is a fiduciary relationship of trust and confidence. *Lee v. LPP Mortg. Ltd.*, 2003 WY 92, ¶ 21, 74 P.3d 152, 160 (Wyo. 2003); *Bevan v. Fix*, 2002 WY 43, ¶ 53, 42 P.3d 1013, 1029 (Wyo. 2002). Although Respondent may have billed in compliance with the LSA terms, she failed to ensure that her charges were reasonable.

[¶13] The reasonableness of attorneys' fees can be determined by application of the "lodestar" concept adopted by the United States Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); and adopted by this Court in *UNC Teton Exploration Drilling, Inc. v. Peyton*, 774 P.2d 584, 594 (Wyo. 1989). The "lodestar" test requires a two-step process: "(1) whether the fee charged represents the product of reasonable hours times a reasonable rate; and (2) whether other factors of discretionary application should be considered to adjust the fee either upward or downward." *In re NRF*, 2013 WY 9, ¶ 7, 294 P.3d 879, 882 (Wyo. 2013), citing *UNC Teton Exploration Drilling*, 774 P.2d at 595.[4] *See also,* Wyo. Stat. Ann. § 1-14-126(b) (LexisNexis 2013), which lists factors a trial court may consider when exercising its discretion in awarding attorneys' fees.

[¶14] The second step requires the application of "billing judgment," which usually is demonstrated "by the attorney writing off unproductive, excessive, or redundant hours." *In re NRF*, 2013 WY 9, ¶ 9, 294 P.3d at 883 (quoting *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 662 (5th Cir. 2002)). "Billing for legal services . . . should not be a merely mechanical exercise. . . . A reasonable fee can only be fixed by the exercise of judgment, using the mechanical computations simply as a starting point . . . ." *Copeland v. Marshall*, 641 F.2d 880, 888 (D.C. Cir. 1980), *cited in In re NRF*, 2013 WY 9, ¶ 9, 294 P.3d at 883.

[¶15] Respondent in this case billed in fifteen-minute increments, in accordance with the contractual terms, times a reasonable rate.[5] However, her practice of billing fifteen minutes for such tasks as signing subpoenas, stipulated orders, and one-page letters demonstrated a complete failure to exercise business judgment, which would have required her to write off unproductive, excessive, or redundant hours.

[¶16] The Court finds the record supports the stipulation; Respondent's actions violated Wyo. R. Prof. Conduct 1.5.

---

[4] Although discussion of the "lodestar" test in *In re NRF* and other cases arises in the context of court-awarded fees and costs, the Court finds the reasoning equally persuasive in this case. The standard for billing an attorney's own client should be no less rigorous than the standard for awarding fees from opposing parties.

[5] Respondent's hourly rate pursuant to the LSA was $200 an hour for office time and $225 per hour for court time. Her rates are not at issue in this matter.

***Misrepresentation in filing the lien statement – Wyo. R. Prof. Conduct 8.4(c)***

[¶17] Attorneys may have liens on certain assets of their clients. Wyo. Stat. Ann. § 29-9-102 (LexisNexis 2013) provides:

> (a)  For professional services performed on behalf of a client, an attorney shall have a lien for compensation due him from the time of giving notice of the lien. The attorney's lien attaches upon:
>
> > (i)  Any papers or money of his client which have come into his possession;
> >
> > (ii)  Money due his client and in the possession of an adverse party.
>
> (b)  Notice as required by subsection (a) of this section to be given to any person against whom the lien is asserted shall be given by certified mail, return receipt requested.

[¶18] Respondent did not file a lien under the attorney lien statute, but instead under Wyo. Stat. Ann. § 29-1-312, which by its terms applies to improvements to real property. She provided no notice of the lien filing to the property owner, although such notice was required by both statutes.

[¶19] The LSA gave Respondent a broad grant of authority to "have a lien on all property or assets" of the client.[6] It did not, however, grant her authority to file a lien on property of her client's ex-husband. *See, e.g., Sue Davidson, P.C. v. Naranjo*, 904 P.2d 354, 356 (Wyo. 1995) ("It is a basic tenet of creditor-debtor law that, before a creditor may attach a lien to property, such property interest must be owned by the debtor."); *Wyo. State Treasurer ex rel. Worker's Comp. Div. v. McIntosh*, 557 P.2d 743, 747 (Wyo. 1976) ("The right to a lien arises by contract of employment, express or implied, between an attorney and his client and may not be extended to others who may have an interest in the litigation but who have not employed the attorney."). Respondent failed to make any limitation to her interest in the marital property to exclude assets of the husband.

---

[6] "A lien may be created only by statute or contract and the courts may not choose to recognize a lien absent its creation through one of these enumerated ways." *Sheridan Commercial Park, Inc. v. Briggs*, 848 P.2d 811, 815 (Wyo. 1993). The Revised Wyoming Statutory Lien Act specifically states that nothing in the Act "shall affect or abridge . . . [t]he right to enforce a lien otherwise created by contract." Wyo. Stat. Ann. § 29-1-104(b)(iii) (LexisNexis 2013).

[¶20]  Finally, as discussed above, *see supra* ¶¶ 9, 10, Respondent attached an inaccurate and unreasonable billing to her sworn Lien Statement which was filed with the county clerk.  Respondent's conduct in attesting to the accuracy of a patently inaccurate document is a clear violation of Wyo. R. Prof. Conduct 8.4(c), which provides that it is professional misconduct for a lawyer to engage in conduct involving misrepresentation.

### *Breach of Confidentiality – Wyo. R. Prof. Conduct 1.9(c)*

[¶21]  Respondent attached to the Lien Statement a copy of the LSA, as well as a copy of her complete billing records containing confidential client information.  The client had agreed in the LSA that Respondent "may file and record this LIEN and/or file this Agreement;" however, she did not agree to filing the billing records.  "[P]reservation of a client's confidences has been described as 'the bedrock principle of the Anglo-American legal system.'"  *Bevan*, 2002 WY 43, ¶ 50, 42 P.3d at 1028 (quotation omitted).

[¶22]  Wyo. R. Prof. Conduct 1.9 addresses an attorney's duties to former clients,[7] and states:

> (c)  A lawyer who has formerly represented a client in a matter . . . shall not thereafter:
>
> > (1)  use confidential information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known, or
> >
> > (2)  reveal confidential information relating to the representation except as these Rules would permit or require with respect to the client.

Wyo. R. Prof. Conduct 1.9(c).

[¶23]  Wyo. R. Prof. Conduct 1.6 pertains to the client.  That rule does permit a lawyer to reveal confidential information to the extent the lawyer reasonably believes necessary "to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client . . . ."  Wyo. R. Prof. Conduct 1.6(b)(3).  Comment 16 to the rule states: "*A lawyer entitled to a fee is permitted by paragraph (b)(3) to prove the services rendered in an action to collect it*."  Therefore, when collecting a legitimate fee, a lawyer may be permitted to reveal confidential information.  *See, Ringolsby v. Johnson,* 2008 WY 127,

---

[7] Respondent no longer represented the client at the time she filed the Lien Statement, yet Respondent continued to owe a fiduciary duty to her former client.  *Bevan*, 2002 WY 43, ¶ 48, 42 P.3d at 1027.

¶ 23, 193 P.3d 1167, 1171 (Wyo. 2008) (Court affirms denial of attorney fee motion because redacted billing records insufficient to allow district court to assess reasonableness of fees).

[¶24]  In this case, Respondent was not entitled to the fees that she claimed, and she did not file her lien in accordance with the law, and therefore, her breach of client confidentiality is not justified.  The Court finds the record supports the stipulation; Respondent's actions violated Wyo. R. Prof. Conduct 1.9.

*Determination of Appropriate Sanctions*

[¶25]  The Court adopts the discussion of the stipulated Report and Recommendation regarding imposition of appropriate sanctions:

Determining the Appropriate Sanction
for Respondent's Misconduct

8.   In determining an appropriate sanction, the Board is guided by the American Bar Association's "Standards for Imposing Lawyer Discipline" (hereafter referred to as the "ABA Standards") which state, "The purpose of lawyer discipline proceedings is to protect the public and the administration of justice from lawyers who have not discharged, will not discharge, or are unlikely properly to discharge their professional duties to clients, the public, the legal system, and the legal profession."

9.   ABA **Standard 3.0** lists four factors to be considered in imposing a sanction after a finding of lawyer misconduct:

   (a)   the duty violated;
   (b)   the lawyer's mental state;
   (c)   the potential or actual injury caused by the lawyer's misconduct; and
   (d)   the existence of aggravating or mitigating factors.

The First Factor: The Duty Violated

10.  Respondent's billing misconduct falls within two ABA Standards, 4.6 ("Lack of Candor") and 7.0 ("Violation of Other Duties Owed as a Professional").  **Standard 4.6**, which appears under the broad heading, "Violation of Duties Owed to Clients," provides:

10

Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases where the lawyer engages in fraud, deceit, or misrepresentation directed toward a client:

4.61 Disbarment is generally appropriate when a lawyer knowingly deceives a client with the intent to benefit the lawyer or another, and causes serious injury or potential serious injury to a client.

4.62 Suspension is generally appropriate when a lawyer knowingly deceives a client, and causes injury or potential injury to a client.

4.63 Reprimand [i.e., "public censure" under Section 4(a)(iii) of Wyoming's Disciplinary Code] is generally appropriate when a lawyer negligently fails to provide a client with accurate or complete information, and causes injury or potential injury to the client.

4.64 Admonition [i.e., "private reprimand" under Section 4(b) of Wyoming's Disciplinary Code] is generally appropriate when a lawyer engages in an isolated instance [of] negligence in failing to provide a client with accurate or complete information, and causes little or no actual or potential injury to the client.

11. **Standard 7.0**, "Violations of Other Duties Owed as a Professional," provides:

Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving false or misleading communication about the lawyer or the lawyer's services, improper communication of fields of practice, improper solicitation of professional employment from a prospective client, unreasonable or improper fees, unauthorized practice of law, improper withdrawal from misrepresentation, or failure to report professional misconduct.

7.1 Disbarment is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public or the legal system.

7.2 Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system.

7.3 Reprimand [i.e., "public censure" under Section 4(a)(iii) of Wyoming's Disciplinary Code] is generally appropriate when a lawyer negligently engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system.

7.4. Admonition [i.e., "private reprimand" under Section 4(b) of Wyoming's Disciplinary Code] is generally appropriate when a lawyer engages in an isolated instance of negligence that is a violation of a duty owed as a professional, and causes little or no actual or potential injury to a client, the public, or the legal system.

12. As stated above, Respondent's conduct in filing a false lien statement violated Rule 8.4(c), which provides that it is professional misconduct for a lawyer to engage in conduct involving misrepresentation. The applicable ABA standard is **Standard 5.1**, "Failure to Maintain Personal Integrity," which falls under the broad heading, "Violations of Duties Owed to the Public" and provides:

Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer

in other respects, or in cases with conduct involving dishonesty, fraud, deceit, or misrepresentation:

5.11    Disbarment is generally appropriate when:

a lawyer engages in serious criminal conduct, a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or the sale, distribution or importation of controlled substances; or the intentional killing of another; or an attempt or conspiracy or solicitation of another to commit any of these offenses; or

a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.

5.12    Suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice.

5.13    Reprimand [i.e., "public censure" under Section 4(a)(iii) of Wyoming's Disciplinary Code] is generally appropriate when a lawyer knowingly engages in any other conduct that involves dishonesty, fraud, deceit or misrepresentation and that adversely reflects on the lawyer's fitness to practice law.

5.14    Admonition [i.e., "private reprimand" under Section 4(b) of Wyoming's Disciplinary Code] is generally appropriate when a lawyer engages in any other conduct that reflects adversely on the lawyer's fitness to practice law.

13.    Finally, Respondent's violation of Rule 1.9(c) falls under **Standard 4.2**, "Failure to Preserve the Client's Confidences," which provides:

Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving improper revelation of information relating to representation of a client:

4.21 Disbarment is generally appropriate when a lawyer, with the intent to benefit the lawyer or another, knowingly reveals information relating to the representation of a client not otherwise lawfully permitted to be disclosed, and this disclosure causes injury or potential injury to a client.

4.22 Suspension is generally appropriate when a lawyer knowingly reveals information relating to the representation of a client not otherwise lawfully permitted to be disclosed, and this disclosure causes injury or potential injury to a client.

4.23 Reprimand [i.e., "public censure" under Section 4(a)(iii) of Wyoming's Disciplinary Code] is generally appropriate when a lawyer negligently reveals information relating to representation of a client not otherwise lawfully permitted to be disclosed and this disclosure causes injury or potential injury to a client.

5.14 Admonition [i.e., "private reprimand" under Section 4(b) of Wyoming's Disciplinary Code] is generally appropriate when a lawyer engages in any other conduct that reflects adversely on the lawyer's fitness to practice law.

The Second Factor: The Lawyer's Mental State

14. The preamble to the ABA Standards includes the following discussion regarding mental state:

The mental states used in this model are defined as follows. The most culpable mental state is that of intent, when the lawyer acts with the conscious objective or purpose to accomplish a particular result. The next most culpable mental state is that of knowledge, when the lawyer acts with conscious awareness of the nature or

14

attendant circumstances of his or her conduct both without the conscious objective or purpose to accomplish a particular result. The least culpable mental state is negligence, when a lawyer fails to be aware of a substantial risk that circumstances exist or that a result will follow, which failure is a deviation of a care that a reasonable lawyer would exercise in the situation.

15. Given that Respondent has acknowledged multiple rules violations, the appropriate sanction under the Guidelines therefore turns on whether Respondent to have acted "knowingly" or "intentionally" as so defined. Respondent acknowledges that she acted knowingly with respect to the rules violations to which she has stipulated.

The Third Factor: The Potential Or Actual
Injury Caused By The Lawyer's Misconduct

16. Under the ABA Standards, "injury" is defined as "harm to a client, the public, the legal system, or the profession which results from a lawyer's misconduct. The level of injury can range from 'serious' injury to 'little or no' injury; a reference to 'injury' alone indicates any level of injury greater than 'little or no' injury." "Potential injury" is defined as "harm to a client, the public, the legal system or the profession that is reasonably foreseeable at the time of the lawyer's misconduct, and which, but for some intervening factor or event, would probably have resulted from the lawyer's misconduct."

17. Respondent concedes there was the potential for serious injury to Respondent's client (as the result of Respondent's billing misconduct) and the public (as the result of Respondent's conduct in filing an improper lien statement).

The Fourth Factor: The Existence Of Aggravating
Or Mitigating Factors

18. ABA **Standard 9.0**, entitled "Aggravation and Mitigation," provides as follows:

15

9.1 *Generally*

After misconduct has been established, aggravating and mitigating circumstances may be considered in deciding what sanction to impose.

9.2 *Aggravation*

9.21 *Definition*. Aggravation or aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed.

9.22 *Factors which may be considered in aggravation*. Aggravating factors include:

 (a) prior disciplinary offenses;

 (b) dishonest or selfish motive;

 (c) a pattern of misconduct;

 (d) multiple offenses;

 (e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;

 (f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;

 (g) refusal to acknowledge wrongful nature of conduct;

 (h) vulnerability of the victim;

 (i) substantial experience in the practice of law;

 (j) indifference in making restitution; and

 (k) illegal conduct, including that involving the use of controlled substances.

9.3 *Mitigation*

9.31 *Definition*. Mitigation or mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed.

9.32 *Factors which may be considered in mitigation*. Mitigating factors include:

 (a) absence of a prior disciplinary record;

 (b) absence of a dishonest or selfish motive;

 (c) personal or emotional problems;

 (d) timely good faith effort to make restitution or to rectify consequences of misconduct;

 (e) full and free disclosure of disciplinary board or cooperative attitude toward proceedings;

(f)   inexperience in the practice of law;
(g)   character or reputation;
(h)   physical disability;
(i)   mental disability or chemical dependency including alcoholism or drug abuse when:
  (1)   there is medical evidence that the respondent is affected by a chemical dependency or mental disability;
  (2)   the chemical dependency or mental disability caused the misconduct;
  (3)   the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and
  (4)   the recovery arrested the misconduct and recurrence of that misconduct is unlikely.
(j)   delay in disciplinary proceedings;
(k)   imposition of other penalties or sanctions;
(1)   remorse; and
(m)   remoteness of prior offenses.

9.4   *Factors Which Are Neither Aggravating nor Mitigating*. The following factors should not be considered as either aggravating nor mitigating:
(a)   forced or compelled restitution;
(b)   agreeing to the client's demand for certain improper behavior or result;
(c)   withdrawal of complaint against the lawyer;
(d)   resignation prior to completion of disciplinary proceedings;
(e)   complainant's recommendation as to sanction; and
(f)   failure of injured client to complain.

19.   Respondent agrees that the failure of [her client] to submit a complaint to the Bar is a factor that should not be considered as either aggravating or mitigating.

20.   The Board accepts the parties' stipulation that the following mitigating factors are present: (1) absence of a prior disciplinary record; (2) full and free disclosure to the Board and Bar Counsel; (3) timely good faith effort to make

17

restitution or to rectify consequences of misconduct; and (4) remorse.

21. The Board accepts the parties' stipulation that the following aggravating factors are present: (1) dishonest or selfish motive; (2) pattern of misconduct; (3) multiple rule violations; (4) vulnerability of victim; and (5) substantial experience in the practice of law.

[¶26] **IT IS, THEREFORE, HEREBY ORDERED:**

1. That the Report and Recommendation for 30 Day Suspension filed by the Board of Professional Responsibility of the Wyoming State Bar on January 10, 2014, is hereby, approved, confirmed, and adopted by this Court as modified above; and

2. That Stacy E. Casper be suspended from the practice of law for a period of thirty days, commencing August 1, 2014; and

3. That Stacy E. Casper reimburse her client's ex-husband for the attorneys' fees and costs he incurred as a result of Respondent's improper filing of the Lien Statement; and

4. That Stacy E. Casper pay an administrative fee of $500 and costs of this disciplinary proceeding to the Wyoming State Bar on or before September 1, 2014; and

5. That, in conjunction with the Wyoming State Bar, Stacy E. Casper design and teach a Wyoming CLE program on proper billing practices and techniques; and

6. That the press release stipulated to by the parties shall be issued by the Wyoming State Bar.

[¶27] **DATED** this 19th day of February, 2014.

BY THE COURT

/s/ _____
**MARILYN S. KITE**
**Chief Justice**

18