DAVIS, Justice.
[¶1] Petitioner Gabrielle Manigault seeks review of a decision in favor of her former attorneys, Daly & Sorenson, LLC, by a panel of the Wyoming State Bar Committee for Resolution of Fee Disputes. That decision was affirmed by the district court, and we in turn affirm that decision.
ISSUES
[¶2] Manigault raises two issues that may be succinctly restated as follows:
1. Did the panel err in concluding it was neither unreasonable nor abusive for Daly & Sorenson to bill its time using minimum increments of fifteen minutes?
*1116 2. Did the panel err in concluding the law firm exercised billing judgment and did not excessively bill Manigault for communication between firm members and employees about her case?
FACTS
[¶3] For more than sixteen years, Manigault retained Daly & Sorenson to represent her in ninety-seven separate legal matters ranging from land and oil and gas transactions to ranching, domestic relations, and criminal matters. She typically paid her bills and any accrued interest when proceeds from her oil and gas interests and cattle sales became available.
[¶4] In late 2012, she retained the firm with respect to one of the matters that gave birth to the present case. Manigault's mother sued her to collect on two separate promissory notes on which she owed nearly three million dollars, and to collect accumulated interest, late fees, and attorney fees.
[¶5] The case ultimately settled when Manigault agreed to confess judgment in favor of her mother (notwithstanding her initial position that the money received from her mother was a gift), and in exchange her mother agreed to forgive the entire debt and write off the loss on her taxes. Manigault paid the law firm roughly thirty percent of what it billed in that case, leaving an unpaid balance of approximately $13,116.33.
[¶6] Earlier in 2012, she retained Daly & Sorenson for what the parties call "the trust litigation." It involved the large estate of Manigault's father and its complex distribution through numerous family trusts and family partnerships and his will. Although she and her son were beneficiaries of those trusts, they were controlled by her stepmother, brother, and several attorneys and financial planners. Moreover, they were created and situated in several states and involved far-flung assets worth hundreds of millions of dollars. The trusts' corpora included stock in publishing companies, holdings in various media outlets, plantations and historic pre-revolution homes in South Carolina, and ranchlands in Wyoming and Montana.
[¶7] The litigation in the trust case primarily involved a trust created in North Carolina and the District of Columbia, which included property in North Carolina and a ranch in Sheridan County, Wyoming. Manigault entered the Sheridan County property to investigate whether the asset was being subjected to waste at the hands of the trustee. The trustee then accused her of trespass and interference with trust operations, and sought to limit her access to any trust property. The ensuing litigation raised issues regarding waste or embezzlement of trust assets, the current location and value of those assets, proper funding of the trusts after Manigault's father died, and the extent of the potentially considerable benefit due to Manigault from the various trusts and her father's other holdings.
[¶8] During investigation and discovery in the trust case, the law firm developed concerns about possible nonfeasance or malfeasance on the part of the various trustees and their accountants. Those concerns required investigation into suspected waste of trust assets, and the firm needed to retain tax and accounting experts to review tens of thousands of pages of documents and assist them in preparation for numerous depositions to be conducted in several states.
[¶9] At the same time the need for those additional expenditures arose, Manigault's account with Daly & Sorenson was in arrears to the tune of over $71,400. Efforts to resolve that problem so that the firm could continue with discovery in the trust case proved fruitless, despite Manigault's repeated promises of payment. The district court eventually permitted the firm to withdraw from representing her in the trust litigation.
[¶10] In early December of 2013, Daly & Sorenson sued Manigault to recover more than $84,500 it claimed she still owed for representation in the promissory note case and the trust case, and for interest it claimed on the outstanding balance. On March 11, 2014, she contested that amount by submitting a Petition for Resolution of Fee Dispute to the Wyoming State Bar. The petition was heard by a three-person panel on May 5, 2014.
*1117 [¶11] On May 14, the panel found that the hourly rates charged by Daly & Sorenson were reasonable, and that since 1997 it had represented Manigault in many legal matters without a written agreement. The absence of such an agreement led the panel to deduct interest and fees for long distance phone calls from the amount it found due the firm. It also deducted charges for the preparation of two motions which benefited the law firm but not Manigault, as well as charges for clerical work it determined were improperly billed at paralegal rates. Finally, it also deducted for a single instance of accidental double billing, and it concluded that Manigault owed the firm $64,621.05 after all of these adjustments.
[¶12] Shortly thereafter, Manigault sought judicial review of that decision, raising only the two complaints that are now before this Court. The district court issued its decision in that proceeding on August 27, 2015. It concluded that although the panel did not say as much, its determination that certain categories of charges should be deducted from the amount Manigault owed was tantamount to a finding that the firm had not carried its burden of showing that those charges were reasonable. It found those aspects of the panel's decision amenable to substantial evidence review, and on that basis affirmed it in part.
[¶13] It could not say the same about the two other complaints raised by Manigault, however, because the panel did not clearly address those matters. The court therefore remanded the case to the panel so that it could make findings of fact and conclusions of law as to why it failed to reduce Manigault's bill with respect to minimum increment billing and billing for intraoffice communications.
[¶14] On February 18, 2016, the panel determined in its second decision that Daly & Sorenson billed Manigault according to minimum increments of fifteen minutes, that such was its normal practice, and that this had been the practice it had employed with Manigault in ninety-seven separate matters over several years. It also determined that the firm's use of those increments was not unreasonable.
[¶15] With respect to billing for certain information exchanges between a firm attorney and another attorney or paralegal employed by the firm, the panel determined that this was likewise the law firm's normal practice, that it had been employed throughout its long history of representing Manigault, and that it was not unreasonable. The panel's consequent decision to deduct nothing further from the amount owed to the law firm led to a second petition for judicial review filed on March 25, 2016.
[¶16] The district court affirmed the panel's second decision on May 3, 2017. It determined that although the panel's findings and conclusions were not particularly detailed, the basic facts set out in those findings were sufficient to permit it to evaluate whether the panel's ultimate findings and conclusions were supported by sufficient evidence, were in accordance with the law, and were otherwise reasonable. Contrary to Manigault's assertions, the court concluded that the panel's decision showed more than reliance on evidence regarding the firm's course of dealing with her over the years. The district court believed that the panel decision also reflected that it found testimony by principals of the firm as to their normal practices for accounting for their time and billing clients to be credible. The context could show the panel that this testimony was more persuasive than that of Manigault's attorney expert witness, who opined that one should conclude that most activities billed as a 15-minute task took far less time to accomplish, and that billing for in-house communications was abusive.
[¶17] Manigault timely perfected her appeal to this Court.
DISCUSSION
[¶18] Under the rules in effect when Manigault initiated her fee dispute, we review decisions by the panel and the district court as we would cases arising from administrative agencies.[1]
*1118 Cotton v. McCulloh , 2005 WY 159, ¶ 18, 125 P.3d 252, 259 (Wyo. 2005). That is, we review the case as if it had come directly from the panel, affording no special deference to the district court's decision. We primarily focus on whether the factual findings of the panel were supported by substantial evidence. In doing so, we ask whether the evidence was capable of providing a rational basis for the decision, and we defer to the panel's parsing of witness credibility unless it is clearly contrary to the overwhelming weight of the evidence. Leavitt v. State ex rel. Wyoming Workers' Safety & Comp. Div. , 2013 WY 95, ¶¶ 17-18, 307 P.3d 835, 840 (Wyo. 2013) ; Dale v. S&S Builders, LLC , 2008 WY 84, ¶¶ 8-11, 188 P.3d 554, 557-59 (Wyo. 2008). The panel could properly treat expert testimony regarding particular events as lacking in worth if it is based upon incomplete knowledge of the context in which those events occurred. Leavitt , ¶ 21, 307 P.3d at 841 ; Dale , ¶ 50, 188 P.3d at 566.
[¶19] On the other hand, this Court reviews the panel's determination of legal issues de novo. In addition, we review its decision for actions which could be arbitrary and capricious as a "safety net" to guard against errors such as failing to admit clearly admissible evidence or failing to provide findings of fact or conclusions of law that are sufficient to permit rational review of its decision. Leavitt , ¶ 19, 307 P.3d at 840 ; Dale , ¶¶ 23, 26, 188 P.3d at 561-62.
[¶20] Although the panel's findings and conclusions are not exemplary, they sufficiently inform reviewing courts that it rejected Manigault's claim that Daly & Sorenson's billing was unreasonable. Two of the firm's senior attorneys testified concerning its billing practices, and this was the only evidence to speak directly to those issues. Manigault's attorney expert witness attempted to derivatively reconstruct what might arguably be a speculative view of the firm's practices from bare billing entries. The panel's findings and conclusions allow us to identify those portions of the record to be evaluated against the panel's decision under the substantial evidence test, and consequently they are not arbitrary and capricious so as to prevent rational review.
[¶21] Turning then to the substantial evidence question, Manigault correctly notes that review must ultimately focus upon evidence bearing upon whether Daly & Sorenson's charges were unreasonable. Rule 1.5(a) of the Wyoming Rules of Professional Conduct for Attorneys at Law sets out a variety of factors that may be pertinent to the reasonableness of a fee:
(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) whether the fee is fixed or contingent.
[¶22] These factors address the primary question of whether the fee charged in a case represents the product of a reasonable rate billed for a reasonable number of hours. In re NRF , 2013 WY 9, ¶ 7, 294 P.3d 879, 882 (Wyo. 2013) ; Cline v. Rocky Mountain, Inc. , 998 P.2d 946, 951 (Wyo. 2000). In general, the answer to this primary question depends on whether sound billing judgment was exercised to minimize unproductive, excessive, or redundant hours. Bd. of Prof. Resp., Wyoming State Bar v. Casper , 2014 WY 22, ¶ 14, 318 P.3d 790, 796 (Wyo. 2014) ; NRF , ¶ 9, 294 P.3d at 883-84.
[¶23] Manigault accuses the law firm of using fifteen-minute minimum billing intervals *1119 to routinely charge her for that interval when the specified work took far less time to accomplish, and of billing for unproductive casual conversations between attorneys and paralegals which did not advance her cases. The record indicates, however, that of the eight factors addressed in Rule 1.5(a), only one received more than a cursory mention by the parties, and only that factor seems to have survived as contested throughout the process of judicial review. That factor is the nature and length of the law firm's professional relationship with Manigault, and the billing practices during that time. She did not rely on that factor to prove her accusations. Instead, she relied principally upon attorney expert testimony that unfavorable inferences could possibly be drawn from a number of billing entries. She did not account for the fact that other inferences were equally possible. On the other hand, members of the law firm testified about its longstanding billing practices, and the adherence to these practices during its relationship with Manigault.
[¶24] Manigault likens the firm's use of a fifteen-minute minimum billing interval to that which was the subject of the attorney disciplinary proceeding in Casper . In that case, the attorney employed a number of unethical billing practices and admittedly misused her fifteen-minute minimum billing interval. She billed fifteen minutes every time she signed a document, and several times she billed fifteen minutes for reviewing a one-page document. She also billed fifteen minutes to review a short document and then billed the same amount of time again for signing it. Casper , ¶ 9, 318 P.3d at 794.
[¶25] In Casper , this Court discussed the practice of billing according to minimum intervals of six, ten, and fifteen minutes, and the consensus that such minimums are not inherently unreasonable. We noted that minimum billing generally serves the interests and needs of both attorneys and clients, and that they are consequently reasonable unless the increments are unreasonably larger than the norm, or they are used, as in Casper , in an abusive manner. As an example of the latter, we observed it would be abusive to bill two fifteen-minute charges for two five-minute phone calls in the same fifteen-minute period. Id. ¶ 11, 318 P.3d at 795 (citing Task Force on Lawyer Business Ethics, Statement of Principles , 51 Bus. Law 745, 760 (1995-1996) ).
[¶26] Nothing approaching that sort of unreasonable or abusive billing is evident on this record. In general, Manigault argues that given the number of times Daly & Sorenson billed her for a fifteen-minute or half-hour task, it is likely that many of those tasks did not take that amount of time, and that the firm was merely "rounding up" the time expended to the next highest fifteen-minute interval. She purports to illustrate that likelihood by noting the number of phone conversations that were billed for one-half of an hour, and that the billed time for particular e-mail exchanges exceeded that represented by the difference in the times noted on incoming and outgoing e-mails. She similarly speculates that some of the firm's charges for intraoffice communications likely related to casual or informal conversations which may have addressed her case without materially advancing or benefitting it. We can discern little more from the expert testimony she presented to the panel.
[¶27] In contrast, the testimony from two of the firm's principal attorneys, Mr. Davidson and Mr. Daly, provided context relating to its billing practices over its more than sixteen-year relationship with Manigault, who chose to enlist its services in nearly one hundred legal matters. Of course, as Manigault points out, that longstanding relationship does not by itself establish the reasonableness of the firm's charges in her two most recent cases. Rule 1.5 indicates that a critical consideration in the inquiry into reasonableness is whether the client understood the attorney's billing structure through a written agreement or otherwise. However, Comment 2 to the rule recognizes that "[w]hen the lawyer has regularly represented a client, they ordinarily will have evolved an understanding concerning the basis or rate of the fee and the expenses for which the client will be responsible."[2]
*1120 [¶28] To show what Manigault likely should have understood in this regard, Davidson and Daly testified as to their billing practices throughout their long-term representation of Manigault and other clients. One or both informed the panel that off-the-cuff casual intraoffice conversations about progress on a case were not billed to clients. Rather, clients were billed only for more formal and lengthy meetings involving conferring with an expert, reviewing a large number of newly received discovery documents, keeping attorneys involved in a case up to date on progress on disparate duties and assignments, coordinating substantive efforts, and adjusting litigation strategies to respond to recently received information and research results.
[¶29] The attorneys also testified that the law firm "rounded down" to the lower minimum time interval when billing for a task that may have bridged two intervals. Furthermore, they explained that phone calls and exchanging e-mails consumed more time than the simple physical acts of talking on the phone or typing on a computer. Those acts were typically accompanied by locating the pertinent file, making notes in preparation for the call, and memorializing the matters discussed in the case file after the call was complete.
[¶30] When we accord proper deference to the panel's allocation of the weight and assessment of the credibility of the testimony presented to it, we are compelled to conclude that the testimony from the attorneys of Daly & Sorenson provided a sufficient and reasonable basis for the panel's decision. Therefore, its conclusion that Manigault should receive no further reduction relating to the firm's fifteen-minute minimum billing practice or billing for substantive and necessary intraoffice communications was supported by substantial evidence.
CONCLUSION
[¶31] The district court properly affirmed the panel's resolution of the fee dispute between Manigault and Daly & Sorenson, and we uphold its decision.

On October 1, 2016, the Rules for Resolution of Fee Disputes were effectively repealed and replaced by the Wyoming Rules for Fee Arbitration, which generally requires the arbitration of fee disputes but permits a subsequent independent civil action and trial de novo if the parties do not agree to be bound by the arbitration. The appellate standard of review of a court's de novo decision is not spelled out in the revised rules.

This is a corollary of the general rule that the terms of an agreement may be "fleshed out" by a course of dealing or course of performance. Roussalis v. Wyoming Med. Ctr., Inc. , 4 P.3d 209, 238 (Wyo. 2000) (quoting I E. Allan Farnsworth, Farnsworth on Contracts § 3.28, at 357 (1990) ). This is not to suggest that a course of dealing would justify unethical and improper billing practices, as we have just noted.