[¶ 1] This matter came before the Court upon the Board of Professional Responsibility's "Report and Recommendation for Order of 30-Day Suspension," filed herein October 24, 2018 in docket D-18-0007, and upon the Board of Professional Responsibility's "Report and Recommendation for Order of 90-Day Suspension," filed herein October 24, 2018 in docket D-18-0008. The Court finds the two dockets should be consolidated for purposes of this order. Now, after a careful review of the Reports and Recommendations and the file, the Court finds both Reports and Recommendations should be approved, confirmed and adopted by the Court, and that Kara Crawford-Fink should be suspended from the practice of law for a total of 120 days. It is, therefore,
[¶ 2] ADJUDGED AND ORDERED that, in docket D-18-0007, the Board of Professional Responsibility's "Report and Recommendation for Order of 30-Day Suspension," which is attached hereto and incorporated herein, shall be, and the same hereby is, approved, confirmed, and adopted by this Court; and it is further
[¶ 3] ADJUDGED AND ORDERED that, in docket D-18-0008, the Board of Professional Responsibility's "Report and Recommendation for Order of 90-Day Suspension," which is attached hereto and incorporated herein, shall be, and the same hereby is, approved, confirmed, and adopted by this Court; and it is further
[¶ 4] ADJUDGED AND ORDERED that, in accord with the recommendations, the two periods of suspension shall run consecutively and not concurrently. Thus, effective December 14, 2018, Kara Crawford-Fink shall be, *326 and hereby is, suspended from the practice of law for 120 days; and it is further
[¶ 5] ORDERED that, pursuant to Rule 25 of the Wyoming Rules of Disciplinary Procedure, Ms. Crawford-Fink shall, for each docket, reimburse the Wyoming State Bar for costs in the amount of $50.00 as well as pay the administrative fee of $750.00. Ms. Crawford-Fink shall pay the total amount of $1,600.00; and it is further
[¶ 6] ORDERED that, regarding docket D-18-0007, Ms. Crawford-Fink shall refund the sum of $2,350.00 to the client; and it is further
[¶ 7] ORDERED that Ms. Crawford-Fink shall satisfy the above financial obligations by writing two checks. For costs, Ms. Crawford-Fink shall issue one check payable to the Wyoming State Bar in the amount of $1,600.00. Ms. Crawford-Fink shall also issue a second check payable to the client in docket D-18-0007 in the amount of $2,350.00. Both checks shall be submitted to, and received by, the Wyoming State Bar on or before January 2, 2019; and it is further
[¶ 8] ORDERED that the Clerk of this Court shall docket this Order of 120-Day Suspension, along with the incorporated Report and Recommendation for Order of 30-Day Suspension and the Report and Recommendation for Order of 90-Day Suspension, as a matter coming regularly before this Court as a public record; and it is further
[¶ 9] ORDERED that, pursuant to Rule 9(b) of the Wyoming Rules of Disciplinary Procedure, this Order of 120-Day Suspension, along with the incorporated Report and Recommendation for Order of 30-Day Suspension and the Report and Recommendation for Order of 90-Day Suspension, shall be published in the Wyoming Reporter and the Pacific Reporter; and it is further
[¶ 10] ORDERED that the Clerk of this Court cause a copy of this Order of 120-Day Suspension to be served upon Respondent Kara Crawford-Fink.
[¶ 11] DATED this 28th day of November, 2018.
BY THE COURT:
/s/ ______________________________
MICHAEL K. DAVIS
Chief Justice
Attachment
BEFORE THE SUPREME COURT
STATE OF WYOMING
In the matter of KARA CRAWFORD-FINK, WSB # 6-3966, Respondent.
WSB No. 2017-116
IN THE SUPREME COURT STATE OF WYOMING
FILED OCT 24 2018
REPORT AND RECOMMENDATION FOR ORDER OF 30-DAY SUSPENSION
THIS MATTER came before the Board of Professional Responsibility on the 3rd day of October, 2018, for consideration of the Stipulation for 30-Day Suspension submitted pursuant to Rules 9 and 12 of the Wyoming Rules of Disciplinary Procedure, and the Board having reviewed the Stipulation, the accompanying affidavit of factual basis and being fully advised in the premises, FINDS, CONCLUDES and RECOMMENDS as follows.
1. Respondent was admitted to practice in Wyoming in 2006, and maintains a law practice in Casper, Wyoming.
2. This matter arises from a complaint which was submitted to Bar Counsel in September 2017 by Respondent's former client ("Client") relating to Respondent's representation of Client in a divorce action.
3. When Respondent first met with Client in late 2016, Client informed Respondent that she was married in 2005 and had daughters born of the marriage in 2010 and 2011. Late in 2016, the husband left the family home and moved to Laramie, where he obtained employment in the construction trades. He was also active in the National Guard, for which he received a $500.00 per month salary and was able to cover his family on Tricare, military health insurance.
*327 4. Client retained Respondent in late 2016 to bring a divorce action against her husband. The October 13, 2016, fee agreement provided for payment by Client of a $5,000.00 non-refundable fee, which was an advance payment of fees which would be earned by Respondent at the rate of $200.00 per hour. On the same date, Respondent interviewed Client and obtained pertinent information, such as her date of marriage, the names and dates of birth of the couple's two children, and the husband's employment history. Respondent advised Client not to have any contact with her husband. Most of Respondent's handwritten notes from that meeting relate to alleged mental and physical abuse of Client and the children by the husband. There are notes indicating that Client owns a home in Casper and her husband owns a home in Oklahoma. There is no other financial information to be found in the notes.
5. Respondent filed a divorce complaint on Client's behalf on October 21, 2016. Service of process on the husband was obtained on December 2, 2016. The husband did not file an answer. On January 3, 2017, Respondent obtained an entry of default and requested a default judgment hearing. On January 4, 2017, a notice of setting was sent scheduling a default hearing for January 31, 2017.
6. Respondent did not meet with or take other action to prepare Client for the default hearing. As a result, Client was unprepared for the series of questions Respondent put to her on the record during the unreported hearing, including, "What was the husband's current employment status?" (2) "What was his current status with the National Guard?" and (3) "Had he reenIisted?" These were all questions Client could have answered had she known in advance that she needed to collect such information.
7. In the complaint Client later submitted to Bar Counsel, Client provided the following description of her feelings about the lack of preparation going into a hearing:
I had my Default Hearing with Judge Daniel L Forgey at 2:00 pm. I called Ms. Crawfords office because she had not showed up 30 minutes prior to the hearing. I talked to [ ] Ms. Crawford's assistant and she told me that Ms. Crawford was on her way. We never had the meeting before the hearing so nothing was discussed. After the hearing we had a little meeting with Ms. Crawford and I told her how upset I was because of how the hearing went.
8. In response to Client's complaint, Respondent gave the following account of the default hearing:
The default trial was set for January 31, 2017. [Client] had not spoken to [her husband] for months. Further he had had very little contact with his daughters since moving back to Laramie. Previous to the divorce [the husband] had been a member of the National Guard. He had earned between $300-$500 a month in the National Guard. However at my inquiry at the default trial [Client] was unsure whether [her husband] had reenlisted after his contract had expired in the fall of 2016. Further [Client] did not know whether [her husband] was employed or unemployed. At the hearing [Client] also testified that [her husband] had not graduated from high school.
At the Default hearing after testimony the Judge ordered the divorce be granted. [Client] was granted primary legal and primary custody. The defendant only had supervised visitation at Casper Family Connections every other Saturday. The only way he could change the visitation was with a petition to modify custody and visitation. The court found that both parties were capable of earning at least minimum wage and ordered $380.00 in child support. Despite my arguments and requests, Judge Forgey ordered that [Client] would provide health insurance, for the minor children.
The draft decree Respondent prepared in advance of the hearing-which Client had not seen-expressly provided that Client would pay for health insurance.
9. Respondent brought a draft divorce decree to the hearing. In addition to having a different plaintiff's name in the opening paragraph, the draft decree contained other mistakes. For instance, the decree drafted by Respondent awarded Client "the real property *328 located [sic] 7375 E. Lake Drive, Evansville, Wyoming." The house at that address is owned by Client's mother. The decree made no provision for the house owned by Client at 201 S. Forest Drive in Casper, nor did it mention the house owned by Client's husband in Oklahoma.
10. The draft decree provided that Client "shall continue to provide health insurance for the benefit of the parties' minor child [sic]." At the time of the default hearing, Client was marginally employed, making just enough money to disqualify her for Title 19, though she and her children were eligible for food stamps. Client could not afford health insurance for her daughters. Respondent failed to consider that the husband had coverage for the children through Tricare, the military health insurance program or that he was eligible for military retirement benefits.
11. During the default hearing, Respondent made notes on the draft decree reflecting Judge Forgey's rulings on custody and visitation. Judge Forgey ordered the husband's visitation with the girls to be supervised, at least initially, and ordered the husband to attend a parenting class. Respondent's handwritten child support calculation attributed minimum wage to each parent, though Client alleges in this disciplinary proceeding that her husband was employed by a drywall contractor in Laramie at $10.00/hr. and received $500.00/mo. for his National Guard duty.
12. At some point after the hearing, Respondent prepared a second draft of the decree incorporating Judge Forgey's rulings regarding custody and visitation. The second draft carried forward the errors and omissions contained in the first decree with respect to provision of health insurance, treatment of real property, and omission of any mention of the husband's retirement benefits.
13. Four days after the default hearing, on February 3, 2017, Client wrote a letter to Respondent terminating the representation:
I am sending this letter to ask for your withdrawal from my case as my attorney. I am also asking you not to file this degree [sic] at this time.
I will need my file from you as soon as possible. I would like to have all charges and balances with the return of the money not used.
You stated that non-disputed cases usually runaround $2,000.00 You also stated that disputed cases usually cost around $5,000.00 which is why my mother [ ] gave you a check for $5,000.00 as we did not know how this case would go. I would expect that we should get a least $3,000.00 returned since this was no dispute or work on this case.
14. In response to Client's complaint against Respondent, Respondent wrote, "After the default trial I received February 3 [sic] letter from [Client] wanting to discontinue our relationship. The decree was completed and an appointment was set on February 24." Respondent further stated, "I asked that an appointment be set, and I wanted to go through the default divorce decree with her and discuss the termination of my representation."
15. Due to bad weather, the meeting ended up being held on February 27, 2017. In a letter to Bar Counsel, Respondent described the February 27 meeting as follows:
At that hearing [sic] we again went over how a default works. That she was now actually divorced and all that was left was the decree. I further explained that the Judge had made and [sic] order and technically any changes would have to be through motion to set aside the judgment. However there may be a way to get somethings [sic] that were not ordered into the decree but there were no guarantees. I also explained that setting aside the default and the judgment could allow her husband to come in and contest the divorce. There was a possibility that she could lose the primary legal and physical custody, not to mention the supervised visitation. These were important things to consider based on his violent history. [Client] argued that it was unfair that she has to take complete responsibility for her children and was angry that he would not have any responsibility for the children.
[Client] indicated there was a military retirement that he now had a job, and he *329 had put the children on tri-care through the military. None of this information was known by either [Client] or me at the time of the hearing. I explained that I did not send out discovery because between the time of service, default and default hearing there was one not enough time to get answers to discovery and two I had no faith that he would answer discovery. In fact I explained that he could not be bothered to answer the complaint for divorce why would he answer any request for productions. Through our meeting I was informed by my client that the job he had was hanging dry wall and it seemed he was getting paid cash under the table. I further explained that sort of income is impossible to document and the child support would not change. At the conclusion of this meeting [Client] did not want to find a new attorney. I asked her to provide me with any information about retirement, income, etc. I also stated it was not my advice that she seeks a motion to set aside the judgment That it was my advice to accept the decree as it was. I further explained this was a default divorce decree and that it did not require her signature however I never file them without an appointment with my client where they had an opportunity to review the decree.
16. Respondent's next activity in the case was on March 31, 2017, when Respondent billed .5 hrs. with the description, "Contact benefits department for military retirement." On April 3, 2017, Respondent billed 5.0 hrs. (a $1,000.00 charge) for services described on the billing statement as, "letter regarding benefits and W-2's." Respondent's April 3, 2017, letter to Client stated:
My office contacted the benefits department for the military. I am told that prior to getting any information regarding his military retirement we will need to have him sign a release. I am also told that he would have had to reach 20 years in the military to have a total vestment in the retirement. I am told that he would have to have paid into the Thrift Savings Plan. He may also have signed up for other benefits but without a release from him there is no way of knowing whether he did nor not.
I am also told that unless you were married for ten years or more you, as the former spouse, you would not be entitled to any benefit that [your husband] signed up for and/or is receiving.
As for child support, his W-2's do not support a change in the child support order. The Court cannot make an order based on hearsay but only what is proven. The Court will not entertain a change of child support based on your letter.
Based on the above the Decree will have to be submitted as originally ordered by the Court and drafted.
In the draft divorce decree Respondent took to the January 31, 2017, default hearing, she identified the date of the parties' marriage as April 30, 2005, i.e., more than ten years prior to the divorce.
17. Client responded to Respondent's April 3 letter with a letter dated April 13, 2017:
In response to your letter about [my hustand's] military retirement, I don't know why you need to know what he has paid into the Thrift Savings plan all you have to do is include it into the decree. I was married to him for 11 years which you should already know. When he reenlisted in to the national Guard I was still married to him. He will retire in 5 years which will make him being in the military a total of 20 years and most of those years I stood by his side and took care of the kids and the house while he was deployed. Which me being your client you should already know. I talked to an army official and he informed me all that I would need was a form called the DD93 which I can go and get any time at the local Army Armory. I thought I was paying you to do these services for me and to find this information out for me but now I have to do it myself because you have been very unreliable.
You never responded to me requesting you to put in the decree that he will provide insurance on our kids. He has already enrolled them on Tricare.
I feel like you miss represented me at the default hiring because you never discussed *330 with me what was going to happen and what I wanted in the decree. I'm your client I paid you $5,000 to you for you to represent me and to do this divorce but I feel like you haven't done anything that we discussed you to do our very first meeting when I hired you. Everything you say you are going to do you do not do. At this point I'm very disappointed with your services. You do not communicate with me at all. I have tried to email you at k.crawford@crawfordlawwy.com and I get an email back stating my email can not be delivered because your email is full. I have called you and asked your assistant [ ] to have you call me and you never have. I feel like this is very unprofessional.
I want a statement showing what you have done for my divorce and the chargers you have charted out of the $5,000. I want this as soon as possible.
18. On April 21, 2017, Respondent met with Client and her mother. Two weeks after the April 21 meeting, Respondent sent Client the following letter dated May 8, 2017:
After having met with you on Friday April 21, 2017 and having reviewed my notes, this letter will advise you of the following.
You have stated that you want to request the Judge's ruling be reopened and have the court amend its judgment that your ex-husband be responsible for the health insurance coverage on your children. If the court allows you to set aside its judgment and reopen the divorce, that opens the door for [your husband] to enter into the proceedings which could change what the court has already ordered. I do not recommend this course of action.
If he enters [your husband] could try to contest custody and visitation and the result could be a standard visitation schedule. Further, the current decree states that you get to claim both children on taxes every year. If the divorce judgment is set aside he could change this provision.
[Your husband] currently has your children covered through his employer without being ordered by the court to do so. To reopen the divorce matter leaves you wide open to other changes should [he] seek to respond and become an active participant which could possibly raise the cost of the divorce and open you up to more liability such taking on half of the marital debt.
Also for [your husband's] participation in this divorce process, it would be my advice that you keep the children on insurance and not trust [your husband] to do so. It is my professional opinion that this is the reason that the Judge did not order [your husband] to cover the children under his insurance.
In addition, the information that you now have is not information that you had at the time of the default hearing and the court may not entertain reopening the matter without a hearing and without first notifying [your husband] that the divorce has been reopened.
It is my advice that you not request the court to set aside the divorce judgment and file the decree as we discussed.
On May 16, 2017, Client sent a letter stating:
I'm requesting your resignation from my case for the following reasons. I feel you are unprofessional you were not prepared for the Default Hearing on January 31, 2017. You did not show up 30 minutes before the hearing like I was told you were going to. Therefore, I had no idea what exactly goes on during a Default Hearing. You never advised me on what to expect which according to you that is why I hired you was for you to inform me on the law and procedures. I filled out a packet when I hired your detailing all my assets and information about the military retirement and other important information to help with the case. I provided you with the information you needed but you somehow lost that information and never addressed it in court which makes me feel like you were not organized and not prepared for court. I have requested multiple times in letters and in meetings for you to provide me documentation on the funds that I paid you to take on my case and you have never provided me with that information."
There is no communication and when there is communication it seems like it *331 takes months to get a meeting or reply from you. When there is communication I feel like what your assistant [ ] informs me is completely different then what we discuss in our meetings. I have repeatedly asked you in two letters and one email and multiple times verbally to provide me documentations on the funds I have provided you with and how they are being used. In our last meeting you told me you would send that to me and you never did. The communication is little to no communication which I feel is very unprofessional.
I disagree with how you have handled my case. I feel like you do not do any research in to the information my case needs so that I'm correctly represented. I feel like you just want me to settle my case. You don't show dedication or compassion to me and my situation. You do not understand my goals and aspirations to my case.
I'm requesting my case file and the return of what money is left from the $5,000 you received. Also an invoice showing the funds I provided you and documentation on what those funds went to. I request you do this within 10 business days of receiving this letter.
19. Upon receipt of Client's letter, Respondent took steps to withdraw from the divorce case. On May 31, 2017, Respondent filed the stipulated motion to withdraw.
On June 12, 2017, Client sent a letter stating:
On May 22, 2017 I signed the stipulated motion to with draw and the stipulated order to with drawl and I have not received my case file and the return of the remanding amount of the money I paid you. I paid you $5,000 and I should have money left over from that amount You stated it would cost $2,500 If [my husband] did not contest and he did not contest I called June 8, 2017 and talked to [your legal assistant] and she told me that the judge has not released you from my case. I need my case file and returned money as soon as possible. So I can pursue my divorce with an attorney that understands military law.
20. Judge Forgey did not sign the order allowing Respondent's withdrawal until June 12, 2017.
21. On June 19, 2017, Respondent sent the following letter to Client:
Enclosed please find a disc which contains your entire file from this office. Please also find enclosed our final invoice on your matter. Please note that you have $2,405.00 left in the retainer paid to this office. Unless we hear from you within ten (10) days from the date of this letter that you disagree with the refund amount of $2,405.00, this office will issue a check in that amount.
The amount Respondent intended to refund was miscalculated. $2,405.00 is the total amount of Respondent's fees. The correct refund amount-setting aside errors in the billing statement itself-should have been $5,000.00 - $2,405.00 = $2,595.00.
22. On July 25, 2017, Respondent sent the following letter to Client:
Please be advised that in my letter of June 19, 2017 I advised you of the amount of the refund and that if you had any questions about the refund or disagreed with the amount you were to contact my office within ten (10) days from the date of the letter. You never advised my office that you disagreed with the amount of the refund either during any telephone conversations you had with my office or by letter. The first time you mentioned you had a disagreement or questions regarding the refund was not until after I had written the check and handed it to you. I will review my invoices to you when I have time and am able to carefully review them. It will not be within the ten (10) business days that you demanded.
To date, Respondent has not refunded the disputed $190.00.
23. Client ultimately hired another lawyer to reopen the divorce proceeding and get a decree entered. On April 17, 2018, Judge Forgey entered a Stipulated Decree of Divorce which provided for supervised visitation by the husband, ordered the husband to provide health insurance for the children, and ordered the husband to pay child support *332 in the amount of $1,292.00 per month beginning March 1, 2018.
24. Respondent failed to comply with her duty to exercise reasonable diligence and promptness in her representation of Client in the following respects:
• Respondent failed to obtain complete information regarding the couple's assets, liabilities and finances at the outset of the representation, and failed to remedy that oversight before the default hearing.
• Respondent failed to meet with Client in advance of the default hearing in order to inform her of what information would be required for the hearing. Had Respondent done so, Client would have been able to contact her husband in advance of the hearing (instead of after) and present evidence regarding her husband's National Guard reenlistment; his salary for that service; the fact that the children were eligible for health coverage through Tricare; the existence of military retirement benefits; and the fact that he had found employment in Laramie. This oversight on Respondent's part resulted in a child support calculation for the husband that was lower than it should have been.
• After being informed of the evidence listed above that should have been presented at the hearing, Respondent did nothing to remedy the oversight
• The default decree of divorce Respondent prepared awarded a house to Client that is owned by her mother. It contained no mention of Client's house in Wyoming nor the husband's house in Oklahoma. It carried forward the erroneous child support calculation and said nothing about military retirement benefits or the availability of health insurance for the children through the husband's National Guard service.
• After the default hearing, Respondent failed to act with reasonable diligence in getting the matter concluded. Respondent met with Client and her mother just twice more, on February 27, 2017, and April 21, 2017, but did nothing else to bring the matter to a conclusion. As a result, Client went months without child support to which she was entitled.
25. Respondent failed in her duty to communicate with Client in at least the following respects:
• Respondent did not adequately inform Client of the evidence that would be required at the default hearing in order for her to achieve the objectives of the representation.
• Respondent failed to return numerous calls from Client.
• When Client asked for an accounting of my time in the matter, Respondent delayed responding to that request for more than four months.
26. Respondent violated her duties regarding legal fees charged to the Client in the following respects:
• Respondent charged 5 hours at $200.00 per hour for the preparation of the letter of April 3, 2017. That letter would not have taken Respondent more than one-half hour to write.
• Respondent charged .4 hours to prepare the motion to withdraw. Having been terminated by Client for her failure to discharge Respondent's professional obligations to Client, it was not reasonable for Respondent to charge Client for the preparation of that motion.
• Respondent miscalculated the amount of Client's refund and did not correct that error when it was brought to Respondent's attention. That error resulted in overcharging Client $190.00.
27. Respondent violated her duty to refund unearned fees upon termination of the representation as indicated above.
28. In summary, Respondent committed multiple violations of Rule 1.3 (diligence) and 1.4 (communication with client), Rule 1.5 (fees) and Rule 1.16 (duties upon termination of representation) of the Wyoming Rules of Professional Conduct as set forth above. As part of the resolution of this matter, Respondent has agreed to refund $2,350.00 to Client on or before December 14, 2018.
*333 29. Aggravating factors include: (1) a disciplinary history (Respondent received a private reprimand in 2017); (2) a pattern of misconduct; and (3) multiple offenses. Respondent's agreement to refund a substantial portion of the fee to the client is a mitigating factor.
30. A 30-day suspension is an appropriate sanction for Respondent's misconduct. If the Court issues an Order of 30-Day Suspension in accordance with this report and recommendation, Bar Counsel and Respondent have agreed to the following press release:
The Wyoming Supreme Court issued an order of 30-day suspension of Casper attorney Kara Crawford-Fink. The disciplinary order resulted from Crawford-Fink's representation of a client in a divorce matter. The client paid a $5,000.00 fee at the outset. Crawford-Fink neglected to pursue the matter diligently and failed to maintain adequate communication with her client, who ultimately terminated Crawford-Fink's representation and retained other counsel. Crawford-Fink also charged an unreasonable fee for her work on the case. After the client discharged Crawford-Fink, Crawford-Fink failed to return all of the unearned portion of the fee. Crawford-Fink agreed that she committed multiple violations of Rules 1.3 (diligence), Rule 1.4 (communication with client), Rule 1.5 (fees) and Rule 1.16 (duties upon termination of representation. Crawford-Fink agreed to return $2,350.00, representing the remaining unearned portion of the fee, to the client Crawford-Fink stipulated to a 30-day suspension in the matter, which was approved by the Board of Professional Responsibility and submitted to the Court. In addition to receiving a 30-day suspension, Crawford-Fink was ordered to pay an administrative fee in the amount of $750.00 and costs of $50.00 to the Wyoming State Bar.
Conclusions of Law
31. Rule 1.3, Wyo.R.Prof.Cond., provides, "A lawyer shall act with reasonable diligence and promptness in representing a client"
32. Rule 1.4, Wyo.R.Prof.Cond., requires, among other things, that a lawyer reasonably consult with the client about the means by which the client's objectives are to be accomplished and promptly comply with reasonable requests for information. The rule further requires a lawyer to "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." Comment [6] to Rule 1.4 provides, in relevant part, "The client should have sufficient information to participate intelligently in decisions concerning the objectives of the representation and the means by which they are to be pursued."
33. Rule 1.5(a), Wyo.R.Prof.Cond., provides, "A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses." The Wyoming Supreme Court has held that a lawyer may only charge a client for work actually performed, and that a lawyer's invoices must "accurately describe the legal services and amounts charged to the client." Bd. of Prof'l Responsibility v. Casper , 318 P.3d 790, 795 (Wyo. 2014). In addition, a lawyer is required to exercise "billing judgment" in the fees charged, which is usually demonstrated "by the attorney writing off unproductive, excess or redundant hours." Casper, supra, 318 P.3d at 796 (quoting In re NRF , 294 P.3d 879, 883 (Wyo. 2013) ).
34. Upon termination of representation, Rule 1.16(d), Wyo.R.Prof.Cond., requires a lawyer to refund any advance payment of fees that have not been earned.
35. Rule 15(b)(3)(D), Wyo.R.Disc.Proc., provides that in imposing a sanction for professional conduct, the BPR shall apply the ABA Standards for Imposing Lawyer Sanctions (the "ABA Standards"). Pertinent to the present Stipulation, it is necessary to apply the ABA Standards relevant to the duties violated by Respondent as well as aggravating and mitigating factors.
36. Respondent's violations of Rules 1.3 and 1.4 call into play Standard 4.4, "Lack of Diligence," of the ABA Standards. Standard 4.4 sets forth the following guidelines:
4.41 Disbarment is generally appropriate when:
*334 (a) a lawyer abandons the practice and causes serious or potentially serious injury to a client; or
(b) a lawyer knowingly fails to perform services for a client and cause serious or potentially serious injury to a client; or
(c) a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client.
4.42 Suspension is generally appropriate when:
(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client, or
(b) a lawyer engages in a pattern of neglect with respect to client matters and causes injury or potential injury to a client
4.43 Reprimand [i.e., "public censure" under Rule 9(a)(3) of the Rules of Disciplinary Procedure] is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client
4.44 Admonition [i.e., "private reprimand" under Rule 9(a)(4) of the Rules of Disciplinary Procedure] is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes little or no actual or potential injury to a client
37. Respondent's violations of Rules 1.5 and 1.16 implicate Standard 7.0, which provides:
Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving false or misleading communication about the lawyer or the lawyer's services, improper communication of fields of practice, improper solicitation of professional employment from a prospective client, unreasonable or improper fees, unauthorized practice of law, improper withdrawal from misrepresentation, or failure to report professional misconduct
7.1 Disbarment is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client the public or the legal system.
7.2 Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client the public, or the legal system.
7.3 Reprimand is generally appropriate when a lawyer negligently engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system.
7.4. Admonition is generally appropriate when a lawyer engages in an isolated instance of negligence that is a violation of a duty owed as a professional, and causes little or no actual or potential injury to a client, the public, or the legal system.
38. ABA Standard 9.0, entitled "Aggravation and Mitigation," provides as follows:
9.1 Generally
After misconduct has been established, aggravating and mitigating circumstances may be considered in deciding what sanction to impose.
9.2 Aggravation
9.21 Definition. Aggravation or aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed.
9.22 Factors which may be considered in aggravation. Aggravating factors include:
(a) prior disciplinary offenses;
(b) dishonest or selfish motive;
(c) a pattern of misconduct;
(d) multiple offenses;
*335 (e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;
(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
(g) refusal to acknowledge wrongful nature of conduct;
(h) vulnerability of the victim;
(i) substantial experience in the practice of law;
(j) indifference in making restitution; and
(k) illegal conduct, including that involving the use of controlled sub-stances.
9.3 Mitigation.
9.31 Definition. Mitigation or mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed.
9.32 Factors which may be considered in mitigation. Mitigating factors include:
(a) absence of a prior disciplinary record;
(b) absence of a dishonest or selfish motive;
(c) personal or emotional problems;
(d) timely good faith effort to make restitution or to rectify consequences of misconduct;
(e) full and free disclosure of disciplinary board or cooperative attitude toward proceedings;
(f) inexperience in the practice of law;
(g) character or reputation;
(h) physical disability;
(i) mental disability or chemical dependency including alcoholism or drug abuse when:
(1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability ;
(2) the chemical dependency or mental disability caused the misconduct;
(3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and
(4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.
(j) delay in disciplinary proceedings;
(k) imposition of other penalties or sanctions;
(l) remorse; and
(m) remoteness of prior offenses.
9.4 Factors Which Are Neither Aggravating nor Mitigating.
The following factors should not be considered as either aggravating nor mitigating:
(a) forced or compelled restitution;
(b) agreeing to the client's demand for certain improper behavior or result;
(c) withdrawal of complaint against the lawyer;
(d) resignation prior to completion of disciplinary proceedings;
(e) complainant's recommendation as to sanction; and
(f) failure of injured client to complain.
Recommendations
In consideration of the Board's findings of fact and conclusions of law, the parties' Stipulation, the facts and conditional admissions in the accompanying Affidavit, and the Supplemental Stipulation entered into by the parties regarding both this proceeding as well as BPR #2017-024, the Board recommends the Wyoming Supreme Court issue an order:
1. Suspending Respondent from the practice of law for a period of 30 days.
2. Requiring Respondent to refund the sum of $2,350.00 to Client on or before December 14, 2018.
3. Requiring Respondent to pay an administrative fee of $750.00 and costs of $50.00 to the Wyoming State Bar within 10 days of the order of suspension.
*336 4. Directing the Wyoming State Bar to issue the parties' stipulated press release as set forth above.
5. If the Court approves the Board's recommendation of a 90-day suspension in BPR #2017-024, such suspension should run consecutively and not concurrently with the 30-day suspension recommended herein.
6. If the Court approves the Board's recommendation and orders a 30-day suspension, such suspension should begin December 14, 2018, so as not to disadvantage Respondent's current clients, given the status and court schedules of matters in which Respondent is currently involved.
7. While not controlling, the Board recommends Respondent complete continuing legal education regarding law firm business management, law firm practice management and seek a mentor to assist with her practice once reinstated.
DATED this 22 day of October 2018.
/s/ Jason A. Neville
Jason A. Neville, Chair
Board of Professional Responsibility
Wyoming State Bar
Attachment
BEFORE THE SUPREME COURT
STATE OF WYOMING
In the matter of KARA CRAWFORD-FINK, WSB # 6-3966, Respondent.
WSB No. 2017-024
IN THE SUPREME COURT STATE OF WYOMING
FILED OCT 24 2018
REPORT AND RECOMMENDATION FOR ORDER OF 90-DAY SUSPENSION
THIS MATTER came before the Board of Professional Responsibility on the 3rd day of October, 2018, for consideration of the Stipulation for 90-Day Suspension submitted pursuant to Rules 9 and 12 of the Wyoming Rules of Disciplinary Procedure, and the Board having reviewed the Stipulation, the accompanying affidavit of factual basis and being fully advised in the premises, FINDS, CONCLUDES and RECOMMENDS as follows.
1. Respondent was admitted to practice in Wyoming in 2006, and maintains a law practice in Casper, Wyoming.
2. The complaint against Respondent in the above-captioned matter was submitted in March 2017 by Casper lawyer Alaina Stedillie ("Stedillie"), who represented the defendants, Mike and Stacy Carruth ("Carruths"), in a case Respondent filed in Natrona County on behalf of Drakes Landscaping LLC ("Drakes").
3. Carruths undertook the construction of a home on Goose Egg Road west of Casper in 2013 and 2014. In April 2014, Drakes was the successful bidder for landscaping work on the home, with a bid price of $248,127.10. Pursuant to Drakes' bid, on May 5, 2014, Carruths paid Drakes half the bid amount, or $124,063.55.
4. On June 17, 2014, Carruths made a second payment in the amount of $111,657.19, bringing total payments to $235,720.74. In addition, Carruths and Tony Kiser, owner of Drakes, agreed that Carruths would receive a credit of $5,500.00 against the bid for a Dodge Dakota truck transferred to Kiser by Carruths.
5. In August 2014, with much remaining to be done in terms of the work proposed in the April bid, Drakes presented additional invoices totaling nearly $40,000.00 for work allegedly requested by Carruths, but not included in the original estimate. In early September 2014, Carruths paid one of the invoices in the amount of $6,906.36, but refused to pay any more. With this payment, and including $5,500.00 for the value of the vehicle conveyed by Carruths to Tony Kiser, payments made to Drakes totaled $248,127.10, i.e., the amount of Drakes' original bid.
6. Drakes discontinued work on the job and engaged Respondent to represent the company in the matter. Respondent wrote a letter dated October 10, 2014, demanding that Carruths pay $29,271.48 within 20 days, or a lien would be filed against the property.
*337 7. Carruths engaged Jennifer McDowell (Stedillie's law partner) to respond to Respondent's demand letter. By letter dated October 29, 2014, McDowell notified Respondent of problems with the quality of Drakes' work done to date and identified significant work that remained to be done. McDowell advised that Carruths were obtaining a bid from another landscaping company to repair and complete the work undertaken by Drakes and intended to present a demand for a refund "based on Drakes Landscaping's breach of warranty and breach of the Bid contract."
8. Carruths engaged Jennifer McDowell (Stedillie's law partner) to respond to Respondent's demand letter. By letter dated October 29, 2014, McDowell notified Respondent of problems with the quality of Drakes' work done to date and identified significant work that remained to be done. McDowell advised that Carruths were obtaining a bid from another landscaping company to repair and complete the work undertaken by Drakes and intended to present a demand for a refund "based on Drakes Landscaping's breach of warranty and breach of the Bid contract."
9. Respondent responded to McDowell with an undated letter asserting that Carruths had demanded, and Drakes had completed, additional work not included in Drakes' original bid. Respondent communicated an offer to settle Drakes' remaining claims against Carruths for $25,000.00.
10. In the spring of 2015 Carruths engaged a different landscaping company to do the repair and completion work.
11. There were no further communications between Drakes and Carruths until August 2015, when Respondent filed a verified complaint (signed under oath by Tony Kiser, owner of Drakes) on behalf of Drakes and against Carruths in Circuit Court for the Seventh Judicial District. Respondent conditionally admits that the verified complaint was replete with errors, misstating the amount of Drakes' bid and the amount of payments made by Carruths. It sought recovery of $38,811.10 plus attorneys' fees from Carruths.
12. McDowell responded with an answer and counterclaim on behalf of Carruths and added Drakes owner, Tony Kiser, as a third-party defendant. Respondent timely filed answers to Carruths' counterclaim against Drakes and the third-party complaint against Kiser. McDowell then filed a motion for judgment on the pleadings and to dismiss the Drakes complaint, asserting that the allegations of the Drakes complaint make clear that nothing was due and owing to Drakes. McDowell also served a Rule 68 offer of settlement demanding payment of $103,526.21 to Carruths by Drakes. On October 19, 2015, Respondent served disclosures pursuant to Rule 5 of the Rules of Procedure for Circuit Courts.
13. The case was thereafter removed from Circuit Court to District Court with Stedillie replacing McDowell as counsel for Carruths. In February 2016, Stedillie served combined written discovery requests. Respondent served timely responses. On March 18, 2016, Stedillie wrote to Respondent about deficiencies in the responses-specifically, disorganized and undated text messages. On April 15, 2016, Respondent served supplemental responses. On June 16, 2016, Stedillie sent Respondent an email advising that a motion to compel would be filed if previously-identified deficiencies in the discovery were not remedied.
14. On June 30, 2016, Judge Sullins entered a scheduling order which required Respondent to designate experts by July 15, 2016; to list other witnesses by November 11, 2016; and setting a bench trial to begin February 6, 2017.
15. Respondent failed to serve Stedillie with a copy of the witness designation until July 18, 2016. When this error was brought to Respondent's attention, Respondent ignored Stedillie's request that an amended/corrected certificate of service be filed.
16. On July 17, 2016, Stedillie filed a motion to compel discovery regarding the previously-identified problems with text messages produced by Respondent. Respondent did not file a response to the motion to compel.
*338 17. On July 26, 2016, Stedillie filed a motion to strike Respondent's list of witnesses. Respondent did not file a response to the motion to strike.
18. On August 19, 2016, Judge Sullins entered an order granting the motion to compel, directing Respondent to serve "properly labeled and bates numbered copies of the text messages requested in discovery, in chronological order, and with all phone numbers identified, within five (5) days after entry of this Order." Judge Sullins invited Stedillie to submit an application for attorney's fees and costs. Stedillie did so on August 26, 2016.
19. On August 30, 2016, Stedillie sent an email to Respondent noting that the time for compliance with the order compelling discovery had expired and advised that a motion for order to show cause would be filed if Respondent did not comply. Respondent responded with an email dated September 2, 2016, stating, "The documents will be to you with all interrogatories and attachments on tuesday [September 6] by 5pm."
20. On September 6, 2016, an envelope containing copies of text messages was delivered to Stedillie's office, but the documents were disorganized and not in compliance with Judge Sullins' order.
21. On September 7, 2016, Stedillie filed a motion for order to show cause. Respondent did not file a response.
22. On October 10, 2016, Judge Sullins issued an order granting the motion to strike, ruling that Respondent could still designate non-expert witnesses by the witness designation deadline of November 1, 2016. Judge Sullins awarded Carruths $840.00 in attorney's fees as requested in Stedillie's fee application on the motion to compel. With respect to the order to show cause, Judge Sullins again ordered Respondent to produce the Bates labeled text messages identifying all phone numbers associated with each text message within 20 days of September 30, 2016 (the date the motion to strike was heard).
23. On November 1, 2016, Stedillie took the deposition of Tony Kiser, owner of Drakes. In the deposition, Kiser contradicted a number of the allegations of the complaint and similarly contradicted statements made in Drakes' written discovery responses. Following the deposition, Stedillie asked Respondent to amend the verified complaint and prepare amended discovery responses setting the facts straight. Respondent never did so.
24. Also during the deposition, Stedillie learned that Drakes was insured. Stedillie demanded a copy of the insurance policy. Respondent said she would provide it but failed to do so despite numerous requests. However, on or about November 1, 2016, Respondent put Nationwide, Drakes' insurer, on notice of the claims asserted against its insured by Carruths.
25. Though Nationwide reserved its right to deny coverage on Carruths' claims, it did undertake to provide a defense and engaged Pete Young, then of White and Steele in Denver, to defend Drakes on the counterclaim and Tony Kiser on the third-party claim.
26. On November 14, 2016, Stedillie filed a motion to compel production of the insurance policy. Respondent did not respond to the motion. The court granted the motion during a hearing held January 6, 2017, but declined to award attorney's fees. Young, who had entered an appearance in the case in mid-December, finally provided Stedillie with a copy of the policy in mid-January.
27. On November 16, 2016, Stedillie filed a second show cause motion after Respondent did not comply with Judge Sullins' order regarding text messages and payment of attorney's fees in the amount of $840.00. Stedillie withdrew the motion two days later, after Respondent paid the fee award.
28. On November 29, 2016, Stedillie sent Respondent a draft of a Rule 11 motion she proposed to file if Respondent did not correct the record regarding some material misstatements. In her transmittal letter, Stedillie stated:
Under Rule 11 of the Wyoming Rules of Civil Procedure, I am required to provide you with a copy of this Motion twenty-one (21) days prior to filing it with the Court to *339 allow you an opportunity to cure the issues set forth therein. Based on the date of this letter, I calculate your deadline to cure as December 20, 2016. As you will see, I set forth the multiple misstatements of material fact contained within the Verified Complaint , along with proof that they are misstatements of material fact, and proof that you are aware of their falsity and have done nothing to disclose their falsity to the Court or correct them as required under the Rules of Civil Procedure and Wyoming Rules of Professional Conduct.
As stated, you have an opportunity to cure under Rule 11 before I file the Motion with the Court. Given the late date of the litigation, I cannot imagine that the Court would allow you leave to amend the Verified Complaint at this point, especially since you have been on notice of the material misstatements since we filed our Motion for Judgment on the Pleadings ; since that time, the problem has only compounded itself due to discovery responses that are internally inconsistent and that contradict the claims made in the Verified Complaint, as well as deposition testimony that contradicts discovery answers and the claims made in the Verified Complaint . I therefore believe that the best way for you to cure this issue is to withdraw your Verified Complaint.
Respondent did not respond.
29. On December 15, 2016, Stedillie filed a motion for summary judgment. Respondent did not file a response to the motion. On the same day, Stedillie filed a motion to strike Respondent's witnesses and exhibits and for sanctions, citing a number of discovery abuses by Respondent. On January 5, 2017, Respondent filed a response to the motion to strike.
30. On December 21, 2016, Stedillie filed the Rule 11 motion she had provided to Respondent three weeks before, styled a "Combined Motion for Sanctions Pursuant to Wyo.R.Civ.P. 11 and Notice of Material Misstatement of Material Facts Pursuant to Wyo.R.Prof.Conduct 3.3." In the ten-page motion, Stedillie recited numerous material misrepresentations and contradictions contained in the verified complaint, Drakes' written discovery responses and Tony Kiser's deposition.
31. On January 6, 2017, a motion hearing was held before Judge Sullins during which the motion to compel production of Drakes' insurance policy was granted. Judge Sullins continued the hearing on Stedillie's motion to strike and Rule 11 motion in order to give Respondent a chance to respond. By the date of that hearing, Stedillie and Young were working together to get the case set for mediation.
32. On January 18, 2017, Young filed an unopposed motion to assign the case to alternative dispute resolution and continue the February 6, 2017, trial date. Judge Sullins signed an order granting the motion the following day.
33. On February 6, 2017, a mediation was held with Judge Dave Park. The case settled with $55,000.00 being paid to Carruths, split equally between Drakes and Nationwide. An order of dismissal was entered on February 22, 2017.
34. In summary, what began with an offer to settle Drakes' claims against Carruths for $25,000.00 ended with $55,000.00 being paid to Carruths by Drakes and its insurer. The lawsuit generated six pages of docket entries. Many of these filings were occasioned by Respondent's failure and refusal to abide by rules of pleading and discovery.
35. Respondent did her clients a disservice in this matter. Moreover, her actions imposed significant burdens on the Carruths, who, though they ultimately prevailed in terms of recovery of a sum of money, incurred significant legal fees defending a case that never should have been filed in the first place. The case required a good deal of Judge Sullins' time and no doubt affected the administration of justice in his court.
36. Respondent also engaged in duplicative billing to her client, billed the client for work not actually performed and submitted billing statements that were erroneous in numerous respects.
37. Respondent's conduct as set forth above constitutes multiple violations of *340 Rules 1.3 (diligence), 1.5 (fees), 3.3 (candor to the tribunal), 3.4(c) (failure to follow rules of the tribunal) and 8.4(d) (conduct prejudicial to the administration of justice) of the Wyoming Rules of Professional Conduct
38. Aggravating factors include: (1) a disciplinary history (Respondent received a private reprimand in 2017); (2) a pattern of misconduct; and (3) multiple offenses. There are no mitigating factors.
39. A 90-day suspension is an appropriate sanction for Respondent's misconduct. If the Court issues an Order of 90-Day Suspension in accordance with this report and recommendation, Bar Counsel and Respondent have agreed to the following press release:
The Wyoming Supreme Court issued an order of 90-day suspension of Casper attorney Kara Crawford-Fink. The disciplinary order resulted from Crawford-Fink's conduct in the representation of a client in a contract dispute. The client, a landscaping contractor, claimed that it was owed approximately $35,000 for its work on a residential construction project Crawford-Fink filed a lawsuit on behalf of the landscaping contractor against the homeowners seeking recovery of that amount The homeowners filed a counterclaim against the landscaping contractor and a third-party claim against its owner. The lawsuit was eventually settled, with the landscaping contractor and its insurer paying $55,000 to the homeowners. The homeowners' attorney filed a complaint with the Office of Bar Counsel at the Wyoming State Bar, contending that Crawford-Fink violated numerous Rules of Professional Conduct in her representation of the landscaping contractor and its owner.
Following investigation of the complaint by Bar Counsel and filing of a formal disciplinary charge, Crawford-Fink admitted that she committed multiple violations of Rules 1.3 (diligence), Rule 1.5 (fees), Rule 3.3 (candor to the tribunal), Rule 3.4(c) (failure to follow rules of the tribunal) and 8.4(d) (conduct prejudicial to the administration of justice) in the matter. Crawford-Fink stipulated to a 90-day suspension in the matter, which was approved by the Board of Professional Responsibility and submitted to the Court In addition to receiving a 90-day suspension, Crawford-Fink was ordered to pay an administrative fee in the amount of $750.00 and costs of $50.00 to the Wyoming State Bar.
Conclusions of Law
40. Rule 1.3, Wyo.R.Prof.Cond., provides, "A lawyer shall act with reasonable diligence and promptness in representing a client."
41. Rule 1.5(a), Wyo.R.Prof.Cond., provides, "A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses." The Wyoming Supreme Court has held that a lawyer may only charge a client for work actually performed, and that a lawyer's invoices must "accurately describe the legal services and amounts charged to the client," Bd. of Prof'l Responsibility v. Casper , 318 P.3d 790, 795 (Wyo. 2014). In addition, a lawyer is required to exercise "billing judgment" in the fees charged, which is usually demonstrated "by the attorney writing off unproductive, excess or redundant hours." Casper, supra, 318 P.3d at 796 (quoting In re NRF, 294 P.3d 879, 883 (Wyo. 2013) ).
42. Rule 3.3(a)(1), Wyo.R.Prof.Cond., provides, "A lawyer shall not knowingly ... make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer."
43. Rule 3.4(c), Wyo.R.Prof.Cond., provides, "A lawyer shall not ... knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists."
44. Rule 8.4(d), Wyo.R.Prof.Cond., provides, "It is professional misconduct for a lawyer to ... engage in conduct that is prejudicial to the administration of justice."
45. Rule 15(b)(3)(D), Wyo.R.Disc.Proc., provides that in imposing a sanction for professional conduct, the BPR shall apply the ABA Standards for Imposing Lawyer Sanctions (the "ABA Standards"). Pertinent to the present Stipulation, it is necessary to apply the ABA Standards relevant to the *341 duties violated by Respondent as well as aggravating and mitigating factors.
46. Respondent's violations of Rule 1.3 call into play Standard 4.4, "Lack of Diligence," of the ABA Standards. Standard 4.4 sets forth the following guidelines:
4.41 Disbarment is generally appropriate when:
(a) a lawyer abandons the practice and causes serious or potentially serious injury to a client; or
(b) a lawyer knowingly fails to perform services for a client and cause serious or potentially serious injury to a client; or
(c) a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client
4.42 Suspension is generally appropriate when:
(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client or
(b) a lawyer engages in a pattern of neglect with respect to client matters and causes injury or potential injury to a client
4.43 Reprimand [i.e., "public censure" under Rule 9(a)(3) of the Rules of Disciplinary Procedure] is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client and causes injury or potential injury to a client
4.44 Admonition [i.e., "private reprimand" under Rule 9(a)(4) of the Rules of Disciplinary Procedure] is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client and causes little or no actual or potential injury to a client
47. Respondent's violations of Rule 1.5 implicate Standard 7.0, which provides:
Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving false or misleading communication about the lawyer or the lawyer's services, improper communication of fields of practice, improper solicitation of professional employment from a prospective client, unreasonable or improper fees, unauthorized practice of law, improper withdrawal from misrepresentation, or failure to report professional misconduct.
7.1 Disbarment is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public or the legal system.
7.2 Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system.
7.3 Reprimand is generally appropriate when a lawyer negligently engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system.
7.4. Admonition is generally appropriate when a lawyer engages in an isolated instance of negligence that is a violation of a duty owed as a professional, and causes little or no actual or potential injury to a client, the public, or the legal system.
48. Respondent's violations of Rules 3.3 and 8.4(d) fall within Standard 6.1, which provides:
Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving conduct that is prejudicial to the administration of justice or that involves dishonesty, fraud, deceit, or misrepresentation to a court:
6.11 Disbarment is generally appropriate when a lawyer, with the intent to deceive the court, makes a false statement, submits a false document, *342 or improperly withholds material information, and causes serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding.
6.12 Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding.
6.13 Reprimand is generally appropriate when a lawyer is negligent either in determining whether the statements or documents are false or in taking remedial action when material information is being withheld, and causes injury or potential injury to a party to the legal system, or causes an adverse or potentially adverse effect on the legal proceeding.
6.14 Admonition is generally appropriate when a lawyer engages in an isolated instance of neglect in determining whether the submitted statements or documents are false or in failing to disclose material information upon learning of its falsity, and causes little or no actual or potential injury to a party, or causes little or no adverse or potentially adverse effect on the legal proceeding.
49. Respondent's violations of Rule 3.4(c) implicate Standard 6.2, which provides:
Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving failure to expedite litigation or bring a meritorious claim, or failure to obey any obligation under the rules of the tribunal except for an open refusal based on an assertion that no valid obligation exists:
6.21 Disbarment is generally appropriate when a lawyer knowingly violates a court order or a rule with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a party or causes serious or potentially serious interference with a legal proceeding.
6.22 Suspension is generally appropriate when a lawyer knows that he or she is violating a court order or rule, and causes injury or potential injury to a client or a party, or causes interference or potential interference with a legal proceeding.
6.23 Reprimand is generally appropriate when a lawyer negligently fails to comply with a court order or rule, and causes injury or potential injury to a client or other party, or causes interference or potential interference with a legal proceeding.
6.24 Admonition is generally appropriate when a lawyer engages in an isolated instance of negligence in complying with a court order or rule, and causes little or no actual or potential injury to a party, or causes little or no actual or potential interference with a legal proceeding.
50. ABA Standard 9.0, entitled "Aggravation and Mitigation," provides as follows:
9.1 Generally
After misconduct has been established, aggravating and mitigating circumstances may be considered in deciding what sanction to impose.
9.2 Aggravation
9.21 Definition. Aggravation or aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed.
9.22 Factors which may be considered in aggravation. Aggravating factors include:
(a) prior disciplinary offenses;
(b) dishonest or selfish motive;
(c) a pattern of misconduct;
(d) multiple offenses;
*343 (e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;
(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
(g) refusal to acknowledge wrongful nature of conduct;
(h) vulnerability of the victim;
(i) substantial experience in the practice of law;
(j) indifference in making restitution; and
(k) illegal conduct, including that involving the use of controlled sub-stances.
9.3 Mitigation.
9.31 Definition. Mitigation or mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed.
9.32 Factors which may be considered in mitigation. Mitigating factors include:
(a) absence of a prior disciplinary record;
(b) absence of a dishonest or selfish motive;
(c) personal or emotional problems;
(d) timely good faith effort to make restitution or to rectify consequences of misconduct;
(e) full and free disclosure of disciplinary board or cooperative attitude toward proceedings;
(f) inexperience in the practice of law;
(g) character or reputation;
(h) physical disability;
(i) mental disability or chemical dependency including alcoholism or drug abuse when:
(1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability ;
(2) the chemical dependency or mental disability caused the misconduct;
(3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and
(4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.
(j) delay in disciplinary proceedings;
(k) imposition of other penalties or sanctions;
(l) remorse; and
(m) remoteness of prior offenses.
9.4 Factors Which Are Neither Aggravating nor Mitigating.
The following factors should not be considered as either aggravating nor mitigating:
(a) forced or compelled restitution;
(b) agreeing to the client's demand for certain improper behavior or result;
(c) withdrawal of complaint against the lawyer;
(d) resignation prior to completion of disciplinary proceedings;
(e) complainant's recommendation as to sanction; and
(f) failure of injured client to complain.
Recommendations
In consideration of the Board's findings of fact and conclusions of law, the parties' Stipulation, the facts and conditional admissions in the accompanying Affidavit, and the Supplemental Stipulation entered into by the parties regarding both this proceeding as well as BPR #2017-116, the Board recommends the Wyoming Supreme Court issue an order:
1. Suspending Respondent from the practice of law for a period of 90 days.
2. Requiring Respondent to pay an administrative fee of $750.00 and costs of $50.00 to the Wyoming State Bar within 10 days of the order of suspension.
3. Directing the Wyoming State Bar to issue the parties' stipulated press release as set forth above.
*344 4. If the Court approves the Board's recommendation of a 30-day suspension in BPR #2017-116, such suspension should run consecutively and not concurrently with the 90-day suspension recommended herein.
5. If the Court approves the Board's recommendation and orders a 90-day suspension, such suspension should begin no sooner than December 14, 2018, so as not to disadvantage Respondent's current clients, given the status and court schedules of matters in which Respondent is currently involved.
6. While not controlling, the Board recommends Respondent complete continuing legal education regarding law firm business management, law firm practice management and seek a mentor to assist with her practice once reinstated.
DATED this 22 day of October 2018.
/s/ Jason A. Neville
Jason A. Neville, Chair
Board of Professional Responsibility
Wyoming State Bar